

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Bonilla | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. **18  3293** |
| American Heritage Federal Credit Union | | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. **550** (☒)

| | | |
|---|---|---|
| AUG - 3 2018 | Daniel McComb | |
| **Date** | **Deputy Clerk** | **Attorney for** |
| | | |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02



**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

18      3293

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 8151 State Road, Philadelphia, PA 19136 _____

Address of Defendant: _____

Place of Accident, Incident or Transaction: _____ Philadelphia _____

---

**RELATED CASE, IF ANY:**

Case Number: _____    Judge: _____    Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes ☐    No ☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes ☐    No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?    Yes ☐    No ☐

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes ☐    No ☐

I certify that, to my knowledge, the within case ☐ is / ☐ **is not** related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __08/03/2018__    *Danil McGrath*    _____
      *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.**    *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☑ 7. Civil Rights   550
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
      *(Please specify):* _____

**B.**    *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
      *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____, counsel of record *or* pro se plaintiff, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: _____    _____    _____
      *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

Mersadies Bonilla
PP# 1030258
8151 State Road –R.C.F.
Philadelphia, PA 19136

# UNITED STATES DISTRICT COURT
### for the
### EASTERN DISTRICT OF PHILADELPHIA

| | | |
|---|---|---|
| Mersadies Bonilla | : | |
| Plaintiff, | : | |
| -v- | : | **COMPLAINT** |
| American Heritage Federal Credit Union, | : | Civil Action No. **18    3293** |
| Defendant. | : | |

## I. Jurisdiction & Venue

1. In particular, Plaintiff claims that Defendant violated sections 1692e(11) and 1692g of the FDCPA. This is a civil action is authorized by Federal Credit Union Act 12 USCS §§ 1751 et seq.; Pennsylvania Fair Credit Extension Uniformity Act, 73 P.S. § 2270.1, et seq.; the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, et seq.; Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA").; the Truth in Lending Act, 15 U.S.C. § 1601, et seq.; the Fair Credit Billing Act, 15 U.S.C. § 1666h and Regulation Z, 12 CFR § 22.6 12(d), and common law causes of action for conversion and unjust enrichment. Plaintiff Bonilla seeks declaratory relief pursuant to 28 U.S.C. Section 2201 and 2202.

2. The defendant maintains its principal office for administration of all business in the Commonwealth of Pennsylvania at 2060 Red Lion Road Philadelphia, PA 19115. Furthermore, alleged unlawful acts and practices of the defendant were committed within or upon the direction of Defendant's agents within the Commonwealth of Pennsylvania.

## II. PLAINTIFF

3. Plaintiff Mersadies Bonilla has been a member at American Heritage Federal Credit Union since 2015. Bonilla has had two accounts with American Heritage Federal Credit Union, credit card and savings share account.

4. Plaintiff Bonilla is a individual and citizen of the Commonwealth of Pennsylvania with an address at 8151 State Road Philadelphia, Pennsylvania 19136 which she is a prisoner at Riverside Correctional Facility since July 28th of 2017.

## III. DEFENDANT

5. Defendant American Heritage Federal Credit Union is a federally chartered credit union and falls under the laws of the Commonwealth of Pennsylvania having its principal place of business for the administration of all business at 2060 Red Lion Road Philadelphia, Pennsylvania 19115.

## IV. FACTS

6. On August 13th of 2016 Plaintiff received two deposits into her share savings account xx2661 in the amount of $3000.00 and $500.00 from another member's deposit accounts. On August 17th of 2016 Plaintiff received a deposit in the amount of $2100.00 to share savings account xx2661. A true and correct copy of AHFCU statement is attached and marked as Exhibit "A(1-3)"

7. On August 19th of 2016 at 9:48 am Defendant called Philadelphia Police Department to their local branch location located at 2620 W. Hunting Park Avenue Philadelphia, Pennsylvania 19129. Philadelphia Police officer Luna (badge number 9781) responded and was told that "$13,000.00 was transferred from her bank account, to below offender's bank account. This all occurred from 08-13-2016 - 08-17-2016" (Defendant informed member Eubanks that she needed to make a police report for her funds to be credited back to her account and report was made while she was inside of the Defendant's local branch). Attached and marked Exhibit "B" is a true and correct copy of said police report number 067136.

8. On August 26th of 2016 Plaintiff was a member to Defendant and called to Defendant to close her credit card account (that was used for personal, family, and household purposes) and was referred to Defendant's Fraud Department.

9. Upon Plaintiffs conversation with Fraud Investigator on August 26th of 2016, Bonilla gave a Philadelphia Police Docket number from a agreement made on July 1st of 2016 to Defendant's Fraud Investigator that verified the investigator's questions.  Bonilla was told by Fraud Investigator that she would be contacted after a Senior Fraud Investigator looked at the file. Plaintiff was not informed that any law officials were involved in this investigation.

10. Defendant did not keep the verbal agreement to contact Bonilla. Instead Bonilla became a probable cause suspect to the Commonwealth of Pennsylvania's docket number(s) MC-51-CR-0022470-2017 and CP-51-CR-0000237-2018 which lead to her arrest on July 28th of 2017.  Plaintiff was also not informed by Defendant  that Philadelphia Police Department was involved at any time during or after investigation.

11. Plaintiff had three deposits into her savings share with Defendant from another member's account. A true and correct copy of the statement of Plaintiff's American Heritage Federal Credit Union Statement  is attached and marked as Exhibit "A(1-3)". Deposit amounts are listed on paragraph 6.

12. Defendant did not conduct a full investigation prior to contacting the Philadelphia Police Department. A true and correct copy of American Heritage's Senior Fraud Investigator Tracey Rambo's investigation report is attached and marked as Exhibit "C(1-2)". AHFCU's victim said that she did not know Plaintiff and then later stated in phone conversation to Philadelphia Police Department Northwest Detective Fleming (badge number 9275) on question number two (Q2.) "Yes I believe she was an accountant in my son's business" which is a contradiction to the initial statement made to Defendant AHFCU Exhibit "D".

13. Defendant charged off delinquency balance of Plaintiff's account shortly after August 30th of 2016.

14. On July 28th of 2017 Plaintiff was arrested on Fraud claims in connection with docket number MC-51-CR-0022470-2017 from police report 067136.

15. On Thursday January 11th of 2018 AHFCU's Senior Fraud Investigator Tracey Rambo served as the Commonwealth of Philadelphia's witness on Philadelphia Court of Common Pleas docket number MC-51-CR-0022470-2017 preliminary hearing in front of The Honorable Judge Thomas G. Gavin. On that date Rambo could not prove that transactions that were said to be fraudulent were made by Plaintiff. Rambo also said that she has done over 500 investigations since August of 2016 and remembered what was said to her by Eubanks from that time. Rambo stated she did not keep contacts from August of 2016. Attached and marked Exhibit "E" is a true and correct copy of Court Reporter Transcript dated January 23rd of 2018.

## V. LEGAL CLAIMS

16. Paragraphs 1 through 15 are incorporated by reference herein.

17. The acts, failures to act, practices and policies of the Defendant set forth above constitute the Defendant took funds from a paid off credit card account after already filing criminal charges in attempt to reclaim $5,600 (which funds were deposited into Plaintiff's savings share account), as well as reported invalid debt via consumer credit reporting agencies which is a violation of Truth in Lending Act 15 USCS §§ 1601 et seq. by failing to investigate Plaintiff's allegations of the billing and adjustment error, emails to fraud investigator constitute as valid written notice under Fair Credit Billing Act 15 USCS § 1666, where emails contained that her online account statements contained billing errors under § 1666(b)(1),(2),(4) 1666 (h) 1666(c) as well as Pennsylvania Fair Credit Extension Uniformity Act 73 P.S. § 2270.1; Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, et seq.; Fair Credit Billing Act, 15 U.S.C. § 1666h and Regulation Z, 12 CFR § 22.6 12(d); common law causes of action for conversion and unjust enrichment <u>Reed v. Lackawanna Cty.</u>::July 26, 2017.

18. Defendant did not conduct a thorough investigation by standards of Federal Credit Union Act 12 USCS §§ 1751 et seq. which ended in plaintiffs arrest.

19. Defendant has a credit committee and has loan officers which extended credit to Plaintiff under Federal Credit Union Act 12 USCS §§ 1751 et seq.

## VI. PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully pray that this court enter judgment in her favor against Defendant and award her relief including but not limited to the following:

A. Granting Plaintiff Bonilla a declaration that the acts and omissions described herein violate his rights under the Constitution and laws of the United States and

B. Granting Plaintiff Bonilla compensatory damages including all expenses and financial losses Plaintiff incurred as a result of the Defendant's actions and compensation for emotional pain and suffering in the amount of $1,500,000.00;

C. Plaintiff sees punitive damages in the amount of $1,000,000.00 from Defendant;

D. Declaratory relief declaring the acts and practices of Defendant to be in violation of the statute(s) cited above, delete AHFCU tradeline on Plaintiffs credit report, mark all judgments obtained as satisfied on credit report, forgive all debt shown on credit reports by AHFCU;

E. Plaintiff seeks jury trial on all issues triable by jury;

F. Reasonable attorney's fees plus of the costs in this suit;

G. Any additional relief this court deems just, proper, and equitable on the injury sustained;

Dated July 31st of 2018

        Respectfully submitted,
        Mersadies Bonilla
        Police Photo Number: 1030258
        Riverside Correctional Facility
        8151 State Road
        Philadelphia, PA 19136

## VERIFICATION

I have read the foregoing complaint and hereby verify that the matter alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true. I certify under penalty that the foregoing is true and correct.

Executed at Philadelphia, PA on July 31st of 2018

Mersadies Bonilla

*See Rule \*205.2(b)(1)*

## Court of Common Pleas of Philadelphia County
### Trial Division
# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

| | |
|---|---|
| PLAINTIFF'S NAME | DEFENDANT'S NAME |
| Bonilla, Mersaches | American Heritage Federal Credit Union |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
| 8151 State Road - 1030258 Philadelphia, PA 19136 | 2060 Red Lion Road Philadelphia, PA 19115 |
| PLAINTIFF'S NAME | DEFENDANT'S NAME |
| | |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
| | |
| PLAINTIFF'S NAME | DEFENDANT'S NAME |
| | |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
| | |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NO. OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 1 | 1 | ☑ Complaint   ☐ Petition Action   ☐ Notice of Appeal |
| | | ☑ Writ of Summons   ☐ Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | |
|---|---|---|---|
| ☐ $50,000.00 or less | ☐ Arbitration | ☐ Mass Tort | ☐ Minor Court Appeal   ☐ Settlement |
| ☑ More than $50,000.00 | ☐ Jury | ☐ Savings Action | ☐ Statutory Appeals   ☐ Minors |
| | ☐ Non-Jury | ☐ Petition | ☐ Commerce (Completion of   ☐ W/D/Survival |
| | ☐ Other: | | Addendum Required) |

CASE TYPE AND CODE (SEE INSTRUCTIONS)

STATUTORY BASIS FOR CAUSE OF ACTION (SEE INSTRUCTIONS)

*Complaint*

RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER)

IS CASE SUBJECT TO COORDINATION ORDER?

| | Yes | No |
|---|---|---|
| | ☐ | ☐ |
| | ☐ | ☐ |
| | ☐ | ☐ |

### TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant:

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS (SEE INSTRUCTIONS) |
|---|---|
| Bonilla, Mersaches | 8151 State Road - 1030258 Philadelphia, PA 19136 |
| PHONE NUMBER          FAX NUMBER | |
| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
| SIGNATURE | DATE   7.31.18 Tues. |

01-101 (Rev. 6/08)



**Mersadies Bonilla**
**PP# 1030258**
**8151 State Road –R.C.F.**
**Philadelphia, PA 19136**

# UNITED STATES DISTRICT COURT
### for the
### EASTERN DISTRICT OF PHILADELPHIA

| | |
|---|---|
| Mersadies Bonilla | : |
| | : |
| Plaintiff, | : |
| | : |
| -v- | : |
| | : |
| American Heritage Federal Credit Union, | : |
| | : |
| | : |
| Defendant. | : |

**MOTION TO PROCEED IN FORMA PAUPERIS**
Civil Action No. **1 8    3 2 9 3**

REQUEST TO PROCEED IN FORMA PAUPERIS STATUS

        I, **Mersadies Bonilla**, petitioner avers that I do not have any money, stocks, saving accounts etc. I also do not own any property or dividends or annuities, therefore I cannot afford to pay the cost of filing the enclosed proceedings because am indigent and incarcerated. I have included account prison financial account statements for the last six months. I am currently incarcerated at Philadelphia Department of Prison's Riverside Correctional Facility located at 8151 State Road Philadelphia, PA 19136. I am requesting to proceed in forma pauperis status, I am aware that false statements made herein are subject to penalties of Title 18.4904 pertaining to unsworn falsification to authorities.

                                                _____
                                                **Mersadies Bonilla**, Pro Se

Mersadies Bonilla
Police Photo Number 1030258
Philadelphia Department of Prisons- RCF
8151 State Road
Philadelphia, PA 19136

Home:
6102 Hayes Street
Hollywood, Florida, 33024

**Greg Zeff, Esq.**
**518 S. 3rd Street**
**Philadelphia, PA 19102**
**800.256.5236**

**Re: Litigation Attorney Needed**

Wednesday July 25th of 2018

Mr. Zeff, Esq.

I hope this brief letter finds you well. I am in need of a litigation attorney. I am currently incarcerated for something that makes no sense even to the District Attorney's office.

I currently work in the law library where I am incarcerated. I am able to do a lot of research (which I have). The lawsuit involves a Federal Credit Union which involves my incarceration. I want to schedule a phone conference with you and I will write in more detail upon response. I am able to do initial filing and pay for transcripts. My criminal case is currently at its 3rd trial listing. The District Attorney's office does not currently have any witnesses willing to take a stand. One on the witnesses is a Philadelphia Municipal Court Judge and the other is my late ex which is a (now) deceased physician. This case will not be moving any farther, even if it goes into trial, I am not guilty. Next trail listing is, August 2nd of 2018 (about the time you will receive this letter). I will be doing as much case law study as I can while I have access to Lexis Nexis. I am looking to hire an attorney on a contingency basis (again, I will pay all fees assessed by court- in advance).

In closing, when/ if you respond to my request, please send one copy to my place of incarceration and my home. I do not receive all my legal mail, so a copy is needed. Thank you in advance.

Respectfully,

Mersadies Bonilla

Mensadies Bonilla 103058
8151 State Road - R.C.F.
Philadelphia, Pennsylvania 19136

United States District Court
Eastern District of Pennsylvania
Prothonotary / Clerk of Court
601 Market Street
Room 2609
Philadelphia, Pennsylvania 19106-1797

Tues July 31th or 2018

To the Prothonotary of Said Court,

It there are any forms that are missing, changed, or incomplete please Send me correct forms you would like me to use. I hope the Cover Letter used and forma PAUPERIS forms are ok. If you would like me to change anything, please send via U.S.P.S. mail.

Thank you in advance.

Mensadies Bonilla
7-31-18 Tues



**American Heritage Federal Credit Union**

MERSADIES S BONILLA
404 W SOMERVILLE AVENUE 2 RIGH
PHILADELPHIA PA 19120

| Account Number | Starting Date | Ending Date |
|---|---|---|
| 622661 | 09/01/2016 | 09/30/2016 |

Printable Version

Best Rates in Town!
12 Month Fixed-Rate CD/IRA
Certificate 1.00% APY*
59 Month Bump-Rate CD/IRA
Certificate 1.91% APY*
*Visit AMHFCU.org for details.

## PRIMARY SAVINGS                 (ID 00)                Download: CSV

Print PRIMARY SAVINGS(00)

| | | | |
|---|---|---|---|
| Balance Forward | | | $609.89 |
| -  1 | Withdrawal | | $5,600.00 |
| +  1 | Deposit | | $1,655.14 |
| +  1 | Dividend | | $0.05 |
| Ending Balance | | | -$3,334.92 |

Transaction Detail

| Date | Description | Withdrawals | Deposits | Balance |
|---|---|---|---|---|
| | Balance Forward | | | $609.89 |
| **09/06/2016** | **Deposit** | | **$1,655.14** | **$2,265.03** |
| 09/07/2016 | Withdrawal | -$5,600.00 | | -$3,334.97 |
| **09/07/2016** | **DEBIT FOR FRAUD TRANSFERS 8/13 & 8/17** | | | |
| 09/30/2016 | Deposit Dividend Dividend Posting | | $0.05 | -$3,334.92 |
| **09/30/2016** | **Annual Percentage Yield Earned 0.13% from 09/01/2016 - 09/30/2016** | | | |
| | Ending Balance | | | -$3,334.92 |
| | **Dividends Paid YTD $0.11** | | | |

| | Total for this Period | Total Year-to-Date | Total Last Year |
|---|---|---|---|
| Total Overdraft Fees | $0.00 | $0.00 | $0.00 |
| Total Returned Item Fees | $0.00 | $525.00 | $0.00 |

## Summary

Year to Date Totals

| | |
|---|---|
| Dividends Paid | $0.11 |
| Interest Paid | $58.76 |





American Heritage
FEDERAL CREDIT UNION

## NCUA

**American Heritage Federal Credit Union**

| Account Number | Starting Date | Ending Date |
|---|---|---|
| 622661 | 07/01/2016 | 08/__/2016 |

MERSADIES S BONILLA
404 W SOMERVILLE AVENUE 2 RIGH
PHILADELPHIA PA 19120

🖨 Printable Version

We've got a loan for that.
Mortgage, Home Equity
Auto, Personal, Mastercard
Get started today
888-553-1234 loansfor...com

### PRIMARY SAVINGS                    (ID 00)                    Download: CSV

🖨 Print PRIMARY SAVINGS(00)

|  |  |  |  |
|---|---|---|---|
| Balance Forward |  |  | $15.00 |
| - 25 | Withdrawals |  | $5,471.00 |
| + 4 | Deposits |  | $6,065.86 |
| + 1 | Dividend |  | $0.03 |
| Ending Balance |  |  | $609.89 |

### Transaction Detail

| Date | Description | Withdrawals | Deposits | Balance |
|---|---|---|---|---|
|  | Balance Forward |  |  | $15.00 |
| **08/13/2016** | **Deposit Home Banking Transfer REF# __1365 From EUBANKS,JOYCE W __146740 Share 00** |  | **$3,000.00** | **$3,015.00** |
| 08/13/2016 | Withdrawal Transfer To Loan 90 | -$1,655.14 |  | $1,359.86 |
| **08/13/2016** | **Withdrawal Shared Branch #07781_ PJM Center 312 N MLK Boulevard Baltimore MD** | **-$800.00** |  | **$559.86** |
| 08/13/2016 | Deposit Home Banking Transfer REF# 6132963 From EUBANKS,JOYCE __8740 Share 02 |  | $500.00 | $1,059.86 |
| **08/13/2016** | **Withdrawal Shared Branch #078232 Loch Ridge Center 607 Loch Raven Bouleva Balti...** | **-$500.00** |  | **$559.86** |
| 08/13/2016 | Uncollected Fee Due since 03/07/16 - Overdrawn | -$15.86 |  | $544.00 |
| **08/13/2016** | **Uncollected Fee Due since 03/21/16 – Overdrawn** | **-$25.00** |  | **$519.00** |
| 08/13/2016 | Uncollected Fee Due since 03/21/16 - Overdrawn | -$25.00 |  | $494.00 |
| **08/13/2016** | **Uncollected Fee Due since 03/28/16 - Overdrawn** | **-$25.00** |  | **$469.00** |
| 08/13/2016 | Uncollected Fee Due since 03/28/16 - Overdrawn | -$25.00 |  | $444.00 |
| **08/13/2016** | **Uncollected Fee Due since 04/01/16 - Overdrawn** | **-$25.00** |  | **$419.00** |
| 08/13/2016 | Uncollected Fee Due since 04/01/16 - Overdrawn | -$25.00 |  | $394.00 |
| **08/13/2016** | **Uncollected Fee Due since 04/20/16 - Overdrawn** | **-$25.00** |  | **$369.00** |
| 08/13/2016 | Uncollected Fee Due since 04/20/16 - Overdrawn | -$25.00 |  | $344.00 |

| Date | Description | Amount | Balance |
|---|---|---|---|
| 08/13/2016 | Uncollected Fee Due since 04/25/16 - Overdrawn | -$25.00 | $319.00 |
| 08/13/2016 | Uncollected Fee Due since 04/25/16 - Overdrawn | -$25.00 | $294.00 |
| 08/13/2016 | Uncollected Fee Due since 05/02/16 - Overdrawn | -$25.00 | $269.00 |
| 08/13/2016 | Uncollected Fee Due since 05/02/16 - Overdrawn | -$25.00 | $244.00 |
| 08/13/2016 | Uncollected Fee Due since 05/20/16 - Overdrawn | -$25.00 | $219.00 |
| 08/13/2016 | Uncollected Fee Due since 05/20/16 - Overdrawn | -$25.00 | $194.00 |
| 08/13/2016 | Uncollected Fee Due since 05/31/16 - Overdrawn | -$25.00 | $169.00 |
| 08/13/2016 | Uncollected Fee Due since 05/31/16 - Overdrawn | -$25.00 | $144.00 |
| 08/13/2016 | Uncollected Fee Due since 06/02/16 - Overdrawn | -$25.00 | $119.00 |
| 08/13/2016 | Uncollected Fee Due since 06/02/16 - Overdrawn | -$25.00 | $94.00 |
| 08/15/2016 | Withdrawal ACH BBVA COMPASS TYPE: ACCT FUND ID: 3770527921 DATA: ONLNE TRNSFR99992158 CO: BBVA COMPASS Entry Class Code: WEB | -$25.00 | $69.00 |
| 08/15/2016 | Withdrawal ACH BBVA COMPASS TYPE: ACCT FUND ID: 3770527921 DATA: ONLNE TRNSFR99992158 CO: BBVA COMPASS Entry Class Code: WEB | -$25.00 | $44.00 |
| 08/17/2016 | Deposit Home Banking Transfer REF# 6155792 From EUBANKS,JOYCE W 450146740 Share 00 | $2,100.00 | $2,144.00 |
| 08/17/2016 | Withdrawal Shared Branch #171012 TRUMARK FCU - PLYMOUTH ME 1920 BUTLER PIKE CONSHOHOCKEN PA | -$2,000.00 | $144.00 |
| 08/19/2016 | Deposit Overdrawn/NSF Fee Refund | $465.86 | $609.86 |
| 08/26/2016 | Uncollected Fee of $25.00 is Due | | |
| 08/26/2016 | Entry Class Code: WEB | | |
| 08/29/2016 | Uncollected Fee of $25.00 is Due | | |
| 08/29/2016 | Entry Class Code: WEB | | |
| 08/31/2016 | Deposit Dividend Dividend Posting | $0.03 | $609.89 |
| 08/31/2016 | Annual Percentage Yield Earned 0.13% from 08/01/2016 to 08/31/2016 | | |
| | Ending Balance | | $609.89 |
| | Dividends Paid YTD $0.06 | | |

Checks (0 In Order)

| | Total for this Period | Total Year-to-Date | Total Last Year |
|---|---|---|---|
| Total Overdraft Fees | $0.00 | $0.00 | $0.00 |
| Total Returned Item Fees | $465.86 | $525.00 | $0.00 |

Summary

Year to Date Total

| | |
|---|---|
| Dividends | $0.06 |
| Interest Paid | $127.29 |

PHILADELPHIA POLICE DEPARTMENT
## COMPLAINT OR INCIDENT REPORT

| YEAR | DIST./OCC. | D.C. No. | SECT. | DIST | VEH. NO. | REPORT DATE |
|---|---|---|---|---|---|---|
| 16 | 39 | 06-7136 | 3 | 39 | 32 | 08-19-16 |

| CRIME OR INCIDENT CLASSIFICATION | CODE | TIME OUT | TIME IN |
|---|---|---|---|
| Fraud | 1105 | 9:45 | |

| LOCATION OF OCCURRENCE | 19129 | IN / OUT | TYPE OF PREM. |
|---|---|---|---|
| 2620 W. Huntng Park | | | 34 |

| DATE OF OCCUR. | DAY CODE | TIME OF OCCUR. | NATURE OF INJURY |
|---|---|---|---|
| 08-13-16 | C | 2:00 P | N/A |

| COMPLAINANT | D.O.B. | AGE | RACE | SEX | PHONE NUMBER |
|---|---|---|---|---|---|
| Joyce Eubanks | 03-11-49 | 67 | B | F | |

ADDRESS

| FOUNDED | REPORT TO FOLLOW | UNIT | CODE |
|---|---|---|---|
| ☐ Yes ☐ No | ☐ Yes ☐ No ☐ Close Out | 6600 | 578 |

| WITNESS | TRACEABLE PROP. | UNIQUE DESCRIPTION OF OFFENDER | OTHER EVIDENCE |
|---|---|---|---|
| ☐ Yes ☐ No | ☐ Yes ☑ No | ☐ Yes ☐ No | ☐ Yes ☐ No |

DESCRIPTION OF INCIDENT (Include Description of Crime Scene if Applicable)

**FRAUD**

Compl got a letter stating her [account] Number to her bank account has changed. [then] compl went to the bank, American Heritage FCU, compl was told that around $13,000 USD was transferred from [her] bank [account]... to below. Offender's bank account. T[total] withdrawal from 08-13-16 - 08-17-16. Compl does not know the offender.

WITNESS

OFFENDER INFORMATION
Mersadie Bunial H27/B/FGT-05-89
404 W. Somerville

| PROPERTY DESCRIPTION (Include Make, Model, Color and Serial No. Where Applicable) | CODE | INSURED | STOLEN VALUE |
|---|---|---|---|
| | | ☐ Yes ☐ No | $13,000 |

VEHICLE 1 – OWNER'S NAME / VEHICLE 2 – OWNER'S NAME

VEHICLE 1 – OPERATOR'S NAME / VEHICLE 2 – OPERATOR'S NAME

| WANTED/STOLEN MESSAGE SENT | DIST./UNIT TERMINAL | RECEIPT NO. | SENT BY |
|---|---|---|---|
| General No. Date | | | |

| REPORT PREPARED BY | NO. | DIST./UNIT | TOTAL PAGES | PAGE NO. |
|---|---|---|---|---|
| | 9781 | 3482 | 1 | 1 |

| REVIEWED BY | NO. | DIST "767" | REFERRAL DATE | CEN NO. |
|---|---|---|---|---|
| | 8882 | | | |

PURSUANT TO ACT 155 OF 1992, THE BELOW PERSON ACKNOWLEDGES RECEIPT OF THE NOTIFICATION OF CRIME SERVICES FORM:

Fleming

256898

75-48 Front (Rev. 11/09)

Exhibit C

# American Heritage
## FEDERAL CREDIT UNION

Tracey Rambo, Senior Fraud Investigator
American Heritage Federal Credit Union
2060 Red Lion Road, Philadelphia, PA 19115
215.969.0777 x 2994 / 215.676.3370 (F)
trambo@amhfcu.org

| Suspect Name:<br><br>Mersadies Bonilla | Suspect Address:<br>404 W. Somerville Ave<br>2 Right<br>Philadelphia, PA 19120 | DOB: 07/05/1989<br>Maryland DL#:<br>B540-599-58-534<br>SSN: 147.86.9889<br>Phone: 954.998.967 | Account Number:<br><br>622661 |
|---|---|---|---|
| Victim Account Info:<br><br>Joyce Eubanks | Victim Account Address: | DOB: 03/11/1949<br>DL#:<br>SSN:<br>Phone: | Account Number:<br><br>450146740 |
| Type of Fraud:<br><br>Identity Theft<br>Theft by Deception | Dates of Incidents:<br><br>August 13 – 17, 2016 | | Total Dollar Loss:<br>$5,600.00 |

**August 13, 2016 @ 3:02am:** a $3,000.00 transfer was performed from Eubanks's savings account #450146740 to Mersadies Bonilla's savings account #622661 via online banking.
- 2 unsuccessful attempts prior to logging in
- IP address 172.56.3.18
- Change email address mjrca94@aol.com to mjcra942@aol.com
- Change phone number from 267-804-5147 to 264-240-5965
- Master Card loan application was submitted

**August 13, 2016 @ 11:13am:** a $500.00 transfer was performed from Eubanks's vacation club account #450146740 to Mersadies Bonilla's savings account #622661 via online banking.
- IP Address 172.56.3.72

**August 17, 2016 @ 12:58pm:** a $2,100.00 transfer was performed from Eubanks's savings account #450146740 to Mersadies Bonilla's savings account 622661 via online banking.
- IP address 64.134.98.121

**August 21, 2016:** Eubanks reported the unauthorized transfers and fraudulent credit card application to AMHFCU and filed a police report (DC# 16-39-067136) at the Hunting Park Branch. Eubanks stated that she thinks her son Dr. Anthony Eubanks had some type of relationship with Bonilla.

**August 22, 2016:** Bonilla contacted AMHFCU regarding her account, when asked about the transactions Bonilla stated that she had a relationship with Anthony Eubanks. Specifically, Bonilla had a romantic relationship, as well as a business relationship. Per Bonilla she was the accountant and registered agent

of the business; the business is Lives Matter Community Health (registered in Florida). Bonilla stated that Anthony owed her money and that the funds transferred were payment for that money owed.

September 7, 2016: AMHFCU provided provisional credit to Eubanks in the amount of $5,600.00.

AMHFCU Review:

1. AMHFCU has pulled the online teller activity for Eubanks and Bonilla for August 13th and 17th. The online activity includes the user logon attempts, IP addresses and the activity performed (e.g., transactions, change of information).
   a. Eubanks IP Address of online teller transactions
      i. 172.56.3.185: on 8/13/2016 from 1.33am to 3.24am – $3,000 transfer at 3.02am
      ii. 172.56.3.72: on 8/13/2016 from 11.09am to 11.12am – $500 transfer at 11.12am
      iii. 64.134.98.121: on 8/17/2016 from 12.54pm to 12.58pm – $2,100 transfer at 12.58pm
   b. Bonilla IP Address
      i. 172.56.3.185: on 8/13/2016 from 2.16am to 3.02am
      ii. No online teller activity from 11.09 to 11.12am
      iii. 64.134.98.121: on 8/17/2016 from 12.50pm to 12.50pm
2. AMHFCU received from TruMark pictures of Bonilla withdrawing the funds from her account via Sharebranch
3. To date AMHFCU has had two phone calls with Bonilla. Each call has been documented



Defense Copy

| INVESTIGATION INTERVIEW RECORD | | PHILADELPHIA POLICE DEPARTMENT NORTHWEST DETECTIVES DIVIS | | CASE# 16-39-067136 | |
|---|---|---|---|---|---|

INTERVIEWER: DET. FLEMING #9275

| NAME Joyce Eubanks | AGE 67 | RACE/SEX B/F | DOB 3/11/49 |
|---|---|---|---|
| ADDRESS | APT# | | PHONE# |

| NAME OF EMPLOYER / SCHOOL | SS# |
|---|---|

| ADDRESS OF EMPLOYER / SCHOOL | PHONE# |
|---|---|

DATES OF PLANNED VACATION / BUSINESS TRIPS

| NAME OF CLOSE RELATIVE | RELATIONSHIP |
|---|---|

| ADDRESS OF RELATIVE | PHONE# |
|---|---|

| PLACE OF INTERVIEW VIA TELEPHONE | DATE 10/12/16 | TIME 9:00am |
|---|---|---|
| BROUGHT IN BY | DATE | TIME |

WE ARE QUESTIONING YOU CONCERNING:
Fraud

| WARNINGS GIVEN BY: | DATE | TIME |
|---|---|---|

ANSWERS:

| (1) | (2) | (3) | (4) | (5) | (6) | (7) |
|---|---|---|---|---|---|---|

I am Detective Fleming #9275 and I am going to ask you questions concerning the incident that occurred on August 13, 2016.

You are not in police custody and you are not under arrest. You may stop this interview at anytime. Do you understand?
  A. Yes

Q1. Do you know Mersadies Bonilla?
A1. I wouldn't know her if she walked in front of me.

Q2. Have you ever heard of Mersadies Bonilla?
A2. Yes I believe she was an accountant in my son's business.

Q3. What can you tell me about your account with American Heritage Federal Credit Union?
A3. My account was hacked and I lost approximately $5600.00.

Q4. Did you give anyone permission to access your account and withdraw or transfer money?
A4. No.

Q5. When was your account accessed?
A5. Between August 13 and August 17, 2016.

Q6. Did you authorize the transfers from your account to Mersadies Bonilla account?
A7. No

| RECORD ☐ YES ☐ NO | CHECKED BY: Det Fleming 9275 |
|---|---|
| REVIEWED BY: | |

75-483

Defense Copy

*Exhibit "E"*

*36 pages*

1

1     IN THE COURT OF COMMON PLEAS

2   FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

3     CRIMINAL TRIAL DIVISION

4      - - - - -

5 COMMONWEALTH    :

6    v.     :  MC-51-CR-0022470-2017

7 MERSADIES BONILLA  :

8      - - - - -

9    Room 506, Criminal Justice Center

10    Philadelphia, Pennsylvania

11      - - - - -

12    Thursday, Janaury 11, 2018

13      - - - - -

14 B E F O R E: THE HONORABLE THOMAS G. GAVIN, J.

15      - - - - -

16     PRELIMINARY HEARING

17 APPEARANCES:

18 DANIELLE WALSH, ESQUIRE

19 Assistant District Attorney

20 For the Commonwealth

21

22 LEON D. GOODMAN, ESQUIRE

23 Attorney for the Defendant

24

25

2

```
 1                           INDEX

 2                   COMMONWEALTH'S EVIDENCE

 3

 4   WITNESS                       DR.  CR.  RDR.  RCR.

 5   TRACEY RAMBO                   3   14   21    22

 6

 7

 8                       EXHIBITS

 9

10   NO.          DESCRIPTION          FOR IDEN.   IN EVD.

11

12

13                   DEFENDANT'S EVIDENCE

14

15   WITNESS                       DR.  CR.  RDR.  RCR.

16

17

18                       EXHIBITS

19   NO.          DESCRIPTION          FOR IDEN.   IN EVD.

20

21

22

23

24

25
```

3

1           THE COURT CRIER:  Counsel, please provide

2   your name for the record.

3           MS. WALSH:  Good morning Your Honor.

4           Danielle Walsh for the Commonwealth.

5           MR. GOODMAN:  Good morning, Your Honor.

6           Leon Goodman for Ms. Bonilla.

7           THE COURT:  Thank you.

8           THE COURT CRIER:  On Your Honor's list for

9   today Mersadies Bonilla.  Commonwealth.

10           MS. WALSH:  Your Honor, we are ready to

11   proceed with the preliminary hearing in this matter.

12           THE COURT:  All right.

13           And, Your Honor, with the Court's

14   permission, the Commonwealth calls Ms. Tracey Rambo as

15   the first witness.

16                   - - -

17           (Whereupon, TRACEY RAMBO, after having

18   been sworn, testified as follows:)

19                   - - -

20               DIRECT EXAMINATION

21                   - - -

22   BY MS. WALSH:

23   Q     Good morning, Ms. Rambo.

24   A     Good morning.

25   Q     Ms. Rambo, can you please start off by telling

4

1    His Honor how it is that you are currently employed?

2    A    I'm a fraud investigator for American Heritage

3    Federal Credit Union.

4    Q    Ms. Rambo, I want to turn your attention back to

5    August of 2016.  Back in August of 2016, were you

6    assigned to investigate a reported fraudulent transfer

7    for account number - 450146740 account holder Joyce

8    Eubanks?

9             MR. GOODMAN:  I'm going to object in terms

10   of the phrase fraudulent transfer.  My objection is

11   based on the fact that this is hearsay, in the sense

12   that, we don't know since that Eubanks person is not

13   here.

14            So all we have is some type of report.

15   But to have it concluded as fraudulent I think is

16   inappropriate.

17            MS. WALSH:  Your Honor, the questioning

18   was whether or not it was reported fraudulent

19   transfer.

20            THE COURT:  Objection is overruled.

21   BY MS. WALSH:

22   Q    If you could please continue, Ms. Rambo, with

23   whether or not you were assigned to investigate this

24   reported fraudulent transfer?

25   A    Yes, I was.

1  Q      And, Ms. Rambo, how is it that you began your

2  investigation?

3  A      Ms. Eubanks came into our branch and reported.

4              MR. GOODMAN:  I'm going to object at this

5  point, Your Honor, unless we can produce this

6  particular witness.

7              MS. WALSH:  Your Honor, at this point,

8  it's not being offered for the truth of the matter.  I

9  would also argue that under Ricker hearsay is

10  admissible and appropriate.

11             THE COURT:  Just for my purposes, I'm

12  taking it that the information that is provided to her

13  is being provided to show why she did what she did.

14  And we're not taking it for the truth of the matter.

15             MS. WALSH:  Thank you.

16             THE COURT:  Go ahead.

17             THE WITNESS:  Ms. Eubanks came into our

18  branch and reported the transactions in question and

19  the change to her -- there were two changes to her --

20  one to her phone number and one to her email address

21  that she was reporting were not done by her.

22  BY MS. WALSH:

23  Q      And when she reported that information to you

24  how, did you proceed from there?

25  A      Well, I work with our information security, so

6

1   our IT group, pulled the IT addresses that were

2   associated with those transactions.

3              And, then, we reviewed both accounts.

4   And, then, we were able to work with one of the other

5   credit unions where a transaction was done and pull

6   pictures.  And we reviewed both statements.

7   Q      Now, let me back up for just a second, Ms.

8   Rambo.  When the Honorable Joyce Eubanks reported this

9   transaction, did you pull a copy of that account to

10  obtain records of that transfer?

11  A      Yes.

12  Q      And when you reviewed records of that transfer,

13  did you determine where the funds ended up ultimately?

14  A      Yes.

15  Q      And where did those funds end up ultimately?

16  A      In Mersadies Bonilla's account.

17  Q      And are you familiar with Mersadies Bonilla?

18  A      Yes.

19  Q      And how are you familiar with her?  Is she a

20  current customer also at the credit union?

21  A      She was a current customer at that time, yes.

22  Q      So, just for clarification, both Honorable Joyce

23  Eubanks and Mersadies Bonilla are both customers of

24  the credit union?

25  A      Correct.

1   Q     And when you reviewed the transaction history of

2   both Judge Eubanks and Ms. Bonilla, were you able to

3   determine where the funds ended up?

4   A     Yes.

5               MS. WALSH:  Your Honor, permission to

6   approach the witness with what I've marked as C-1 for

7   identification purposes.

8               THE COURT:  Okay.

9   BY MS. WALSH:

10  Q     Ms. Rambo, I've just handed you what's been

11  marked C-1 for identification.  Can you please tell

12  His Honor what those documents entail?

13  A     They're the account statements for Joyce Eubanks

14  and Mersadies Bonilla.

15  Q     And are these fair and accurate copies of the

16  statement that you reviewed in preparing for your

17  investigation?

18  A     Yes.

19  Q     Now, Ms. Rambo, when you were reviewing the

20  account -- I'm going to turn your attention to the

21  account of Joyce Eubanks.

22              When you reviewed that transaction

23  history, and you spoke with Ms. Eubansk, did she

24  identify any transactions from her account that she

25  did not authorize?

8

1   A      Yes.  The $3,000 transfer on August 13th; the

2   $2,100 transfer on August 17th, and then the $500

3   transfer on August 13th.

4   Q      And, Ms. Rambo, on those transfers does it

5   indicate, on the statement, where those funds were

6   transferred to?

7   A      It does.

8   Q      And where were those funds transferred to?

9   A      To the account of Mersadies Bonilla - 622661.

10  Q      And after you reviewed the transaction history

11  for Joyce Eubanks, did you also then review

12  transaction history for customer Mersadies Bonilla?

13  A      Yes.

14  Q      And what, if anything, did you note in that

15  transaction history?

16  A      That the funds were put into this account.  And

17  that there were subsequent transactions done after the

18  funds were put in.

19  Q      And the statement of Ms. Bonilla, did the

20  transfers from Ms. Eubanks' account go into Ms.

21  Bonilla's account at the same time that you reviewed

22  for Ms. Eubank's statement?

23  A      Yes.

24  Q      So those transfers corresponded on both counts?

25  A      Yes.

9

1   Q      And after the final transfer on August 17, 2016

2   what, if anything, else did you note on Ms. Bonilla's

3   account?

4   A      After the transfer went in from Ms. Eubanks'

5   account on the 17th, there was a $2,000 shared branch

6   withdrawal the same on the 17th at TruMark Credit

7   Union in Plymouth Meeting.

8   Q      And, Ms. Rambo, can you please tell His Honor

9   what that means a withdrawal from a shared branch

10  account?

11  A      For credit unions, they can participate in

12  what's called a shared branch network.  And within

13  that network members of American Heritage can go to

14  other credit unions and access their account as long

15  as that credit union is part of the shared branch

16  network.

17  Q      Now, if I could just direct your attention to

18  the part of Ms. Bonilla's account history in which it

19  indicates that $2,000 transfer from Judge Eubanks'

20  account.  Can you please tell His Honor what the

21  balance of Ms. Bonilla's account was before that

22  $2,000 transfer?

23  A      The balance was $44.00.

24  Q      I apologize.  The $2,100 transfer.  And after

25  the transfer what was the account balance?

1    A      $2,144.

2    Q      And what is the very next transaction on that

3    account?

4    A      The $2,000 withdrawal.

5    Q      And based on that $2,000 withdrawal what, if

6    any, action did you take?

7    A      I reached out to TruMark Credit Union to obtain

8    a picture to see who was making that withdrawal.

9           MS. WALSH:  Your Honor, permission to

10   approach the witness with what I'm going to mark

11   collectively as C-2 for identification.

12          THE COURT:  Okay.

13          MR. GOODMAN:  Your Honor, I'm going to

14   object unless they have a chain of custody to

15   establish what time and the circumstance when these

16   photos were taken.

17          In fact, we don't know in terms of how and

18   when they were done.  And since this occurred at a

19   bank not her own, I have to argue to the Court there

20   needs to be someone from this bank to authenticate

21   this.  We can't just bring in documents and say, oh,

22   here it is.  Someone needs to authenticate it.

23          MS. WALSH:  And, if I may, Your Honor,

24   there is a time-stamped date and a time-stamp on the

25   bottom left corner of these documents.

1               These documents were obtained by Ms.

2      Rambo, regular course of business.  Our fraud

3      investigator was at a preliminary hearing.

4               And she did personally reach out to the

5      branch to obtain these photographs.

6               MR. GOODMAN:  And that was done in

7      anticipation of litigation.  And in that circumstance

8      you have to have somebody from that original bank.

9               These can't be authenticated because they

10     were not done by this bank.  She doesn't know that

11     these times and dates, that are indicated on here,

12     are, in fact, accurate.

13              And we need someone from that particular

14     bank in order to authenticate them, Your Honor.

15              THE COURT:  But I'm assuming the

16     Commonwealth's representation is that if we get to

17     that point you're going to have a representative of

18     the bank who will authenticate all of that having in

19     mind it's a preliminary hearing.

20              MS. WALSH:  Absolutely, Your Honor.

21              THE COURT:  Objection is noted and

22     overruled.

23     BY MS. WALSH:

24     Q    And, Ms. Rambo, if you can please start off by

25     telling His Honor what C-2 is collectively?

1  A      They are pictures of an individual doing a

2  withdrawal -- in the TruMark Branch at Plymouth

3  Meeting.

4  Q      And do those photographs indicate the date and

5  time of that transaction, Ms. Rambo?

6  A      They do.

7  Q      And, at some point in time, did you come into

8  possession of these photographs?

9  A      Yes.

10  Q      How is it that you came into possession of these

11  photographs?

12  A      They were emailed to me.

13  Q      And who were they emailed to you by?

14  A      TruMark Credit Union.

15  Q      And was that after you submitted a request to

16  TruMark to attempt to investigate that $2,000 transfer

17  on August 17, 2016?

18  A      Yes.

19  Q      And, Ms. Rambo, the person that's depicted in

20  these photographs, do you recognize that person in

21  court today?

22  A      Yes.

23  Q      Who was that person?

24  A      Ms. Bonilla in the black.

25            MS. WALSH:  And, Your Honor, for the

1    record, identifying the defendant by point of finger

2    as well as article of clothing.

3    BY MS. WALSH:

4    Q      Now, Ms. Rambo, the photographs that I just

5    showed you, those are fair and accurate copies of the

6    photographs that you received from TruMark when you

7    submitted your request, is that correct?

8    A      Correct.

9    Q      Now, after you obtained these photographs, Ms.

10   Rambo, did you determine what the total amount was of

11   the unauthorized transactions from Judge Eubanks'

12   account?

13   A      Yes.

14   Q      And what was that amount?

15   A      $5,600.

16   Q      And just to clarify, I know that you testified

17   previously, that includes the transaction on August

18   13, 2016 for $3,000?

19   A      Correct.

20   Q      And the subsequent transaction on August 13,

21   2016 for $500?

22   A      Correct.

23   Q      And, finally, the transaction on August 17, 2016

24   for $2,100?

25   A      Correct.

1   Q      And did Judge Eubanks, during the course of your

2   investigation, indicate to you whether or not Ms.

3   Bonilla had any permission to withdraw those funds

4   from her account?

5   A      She said she did not.

6   Q      Did she indicate that she gave anybody

7   permission to withdraw those funds from her account?

8   A      She did not.

9   Q      And after this was reported you concluded your

10  investigation.  What, if anything, did you do to

11  compensate Judge Eubanks?

12  A      We reimbursed Judge Eubanks.  So we debited

13  Mersadies' account and credited the account of Ms.

14  Eubanks.

15          MS. WALSH:  Your Honor, I have no further

16  questions at this time.  Thank you, Ms. Rambo.

17                    -  -  -

18              CROSS-EXAMINATION

19                    -  -  -

20  BY MR. GOODMAN:

21  Q      Good morning, ma'am.

22  A      Good morning.

23  Q      Now, first, as it rlates to the owner of this

24  particular account, was the only person that was

25  listed on this account Judge Eubanks, or were there

1  other owners listed?

2  A      It was just Joyce Eubanks.

3  Q      So you're saying this was not a joint account

4  with her son?

5  A      No.  This was a sole account.

6  Q      And did you ever inquire, with Ms. Eubanks,

7  whether or not she had given access to this particular

8  account to her son?

9  A      And she said she had not.

10  Q     Did you ever speak with him to determine whether

11  or not he had -- or indicated to you he had access to

12  this account?

13  A     I did not.

14         MS. WALSH:  Objection.

15         Relevance, Your Honor.

16         THE COURT:  She's already answered it.

17  BY MR. GOODMAN:

18  Q     Now, you indicated that you spoke with members

19  of your IT in terms of where the IP address that was

20  used to make these transcripts.  Correct?

21  A     Correct.

22  Q     Are you an IT person?

23  A     I am not.

24  Q     So, in terms of the location, did you even know,

25  or were you told by someone, whether or not this

1    occurred in Philadelphia County?

2    A      I was not told.

3    Q      So do you know whether it happened in

4    Philadelphia County or not?

5    A      I do not.

6    Q      Obviously, as a fraud investigator you

7    understand.   And you know that as it relates to

8    transactions on the computer they can basically occur

9    pretty much anywhere in the world, correct?

10   A      Correct.

11   Q      So the one transaction that you do know about

12   the specifics, we can agree is a transaction, and,

13   according to these records, was a withdrawal that

14   occurred in Conshohocken, PA, correct?

15   A      Correct.

16   Q      We can both agree Conshohocken, PA is not in

17   Philadelphia County?

18   A      Correct.

19   Q      During the course of your investigation, as it

20   relates to the account of Judge Eubanks, did you check

21   to see IP addresses for other transactions?

22   A      I have to refer to my notes.

23   Q      Okay.

24   A      I don't have that information.

25   Q      So you don't know whether or not the IP address

17

1    that was used, as it related to withdrawals for -- as

2    you allege from my client Ms. Bonilla -- was the same

3    IP address that was used for any other withdrawals,

4    correct?

5              MS. WALSH:  Your Honor, at this point,

6    I would just object to vague.  I'm not exactly sure

7    what other withdrawals counsel is referring to.

8              THE COURT:  I'm confused myself.

9              And I'm assuming Counsel is going to clear

10   that up.

11             MR. GOODMAN:  I'll limit what I'm

12   referring to on the dates that are listed on C-1 as it

13   relates to the account of Eubanks.

14   BY MR. GOODMAN:

15   Q    And that appears from August 3, 2016 until

16   August 19, 2016.

17   A    I'm not sure I understand the question.

18   Q    The question simply is this, ma'am, the IP

19   addresses, that were used on the other withdrawals

20   from this account, did you check to see whether or not

21   they were any of the same IP addresses, as it relates

22   to the withdrawal, that was allegedly done by Ms.

23   Bonilla?

24             Basically, did you see whether or not the

25   IP address from Ms. Bonilla matches up to any of your

18

1   other withdrawals?

2   A      Yes.  The IP address that used on Ms. Bonilla's

3   account -- two of them in particular -- were also used

4   on Ms. Eubanks' account, if that's the question.

5   Q      As it relates to Ms. Eubanks' accounts, were

6   there other withdrawals that matched to that IP

7   address?

8   A      That, I don't have.  I don't have that

9   information right now.

10  Q      So you don't know?

11  A      Correct.

12  Q      And, as you already indicated, you don't know

13  whether or not that IP address was, in fact, in

14  Philadelphia County?

15  A      I don't have that information, no.

16  Q      Now as it relates to the photographs -- C-2 --

17  ma'am, did you actually go out to the particular

18  location?

19  A      No.

20  Q      So, you can agree that, in terms of the where,

21  the authenticity, you don't know whether or not these

22  were actually taken at this location as they purport

23  to be?

24  A      I do not, no.

25  Q      And did you go out, or did you attempt to speak

19

1   with any tellers -- or in particular -- the teller

2   that serviced the individual that's pictured in this

3   particular account?

4   A     No.

5   Q     Now, as part of your investigation, as it

6   relates to the owner of the Eubanks' account, did you

7   ever inquire with her about her son and his

8   involvement with my client?

9              MS. WALSH:  Objection to relevance, Your

10  Honor.

11             THE COURT:  What would be the relevance,

12  Counsel.

13             MR. GOODMAN:  Well, Your Honor, I'm

14  looking at the affidavit of probable cause which seems

15  to suggests that there was some type of relationship.

16             And as a result, I'm inquiring whether or

17  not this investigator did any followup as it relates

18  to that because if the son had potential access he

19  could have given it to my client.

20             THE COURT:  I realize this is a

21  preliminary hearing counsel.  And I realize that

22  sometimes we go fishing.  But I don't think this is an

23  appropriate fishing expedition.

24             The objection is sustained.

25  BY MR. GOODMAN:

20

1  Q      Did you reduce to writing your contacts with the

2  Eubanks family?

3              MS. WALSH:  Objection.

4              Relevance.

5              THE COURT:  She can answer yes or no.

6              THE WITNESS:  No.

7  BY MR. GOODMAN:

8  Q      So your testimony today, as it relates to what

9  allegedly was said to you by The Honorable Judge

10  Eubanks, came from your memory?

11  A      Correct.

12  Q      And, those interviews occurred back in August of

13  2016?

14  A      Correct.

15  Q      And how many investigations have you done since

16  then?

17              MS. WALSH:  Objection.

18              Relevance, Your Honor.

19              THE COURT:  She can answer the question.

20              Go ahead.

21  BY MR. GOODMAN:

22  Q      If you know?

23  A      Over 500.

24              MR. GOODMAN:  Thank you, Your Honor.

25              I have nothing further.

1           MS. WALSH:  Your Honor, very briefly.

2           I just have redirect.

3                   -  - -

4           REDIRECT EXAMINATION

5                   -  - -

6   BY MS. WALSH:

7   Q    Ms. Rambo, Counsel asked you some questions

8   regarding your investigation into IP address and where

9   the location was.  Can you tell me where Judge Eubanks

10  -- without giving the full address -- where her

11  residence is located?

12  A    Philadelphia.

13  Q    And it's the city and county of Philadelphia, is

14  that correct?

15  A    Correct.

16  Q    And when Judge Eubanks came in to report this

17  information to you, to begin your investigation, where

18  was the notice of the change in contact information

19  sent to Judge Eubanks?

20  A    At her address in Philadelphia.

21          MS. WALSH:  Thank you.

22          I have no further questions.

23          THE COURT:  Any followup.

24          MR. GOODMAN:  Yes, Your Honor, if I may

25  just one short brief series of questions.

22

1                            - - -

2                     RE-CROSS EXAMINATION

3                            - - -

4    BY MR. GOODMAN:

5    Q     Ma'am, as it relates to The American Heritage

6    Federal Credit Union, where are your computer servers

7    located at?

8    A     Philadelphia.

9                MR. GOODMAN:  Nothing further, Your Honor.

10   BY THE COURT:

11   Q     So in our modern banking system of today it's

12   your almighty computer that controls everything.  And

13   the computer says the money went into "x" account.

14   And it came out of "y" account.

15               All of those records are maintained in the

16   City of Philadelphia?

17   A     Correct.

18   Q     And if someone makes a transaction no matter

19   where they make it it gets recorded in Philadelphia.

20   And if someone wants to take money out of an account

21   and put it in it all goes through the Philadelphia

22   system?

23   A     Correct.

24               THE COURT:  Thank you.

25               You can step down.

1              (Witness excused).

2              MS. WALSH:  Your Honor, at this point, I

3      would move what's been marked as C-1 and C-2 into

4      evidence.

5              THE COURT:  Any objection, Counsel.

6              MR. GOODMAN:  No, Your Honor.

7              THE COURT:  Then they're admitted.

8              MS. WALSH:  Your Honor, I would also mark

9      and move, as C-3, an interview conducted with Judge

10     Eubanks with a subsequent form, reporting owenership

11     and non-permission indicating that she is the account

12     owner.  That $5,600 was removed from her account.

13             And that she did not give anybody

14     permission to take those funds from her account.

15             MR. GOODMAN:  I'm going to object to the

16     statement being admitted, Your Honor.  Realistically,

17     if this is what the Government is going to do, based

18     on Commonwealth's witness's statement, there is no

19     need to have preliminary hearings.

20             You can't just mark a statement and move

21     it in.  You need to have someone come and testify.

22     Ownership and non-permission is one thing.

23             But just to have random statements marked

24     and moved in and read in, realistically, you're

25     defeating the whole purpose of a preliminary hearing.

1          It's one thing for hearsay in terms of

2     certain elements to come in.  But to just mark and

3     move statements -- this is not the Federal Court where

4     you have an investigator come in, read it.  And that's

5     the end of it.

6          Constitutionally, there's a right to

7     confront.  And, now, we have an accusatory statement,

8     that they're trying to move in, violating my client's

9     Constitutional right to confront.

10          MS. WALSH:  If I may, Your Honor.

11          Your Honor, the statement that's taken

12     from Judge Eubanks, the accompanying ownership and

13     non-permission interview sheet, is, in fact, limited

14     just for the ownership and non-permission.

15          And I do have a copy for the Court to

16     review.  There is nothing that's going into anything

17     further other than whether or not she authorized any

18     transfers from her account as she's the account

19     owner.  That's what it's limited to.

20          In Philadelphia, we use these ownership

21     and non-permission forms all the time under both

22     Ricker and Branch and, subsequently, under Ricker.

23          The whole purpose that the Philadelphia

24     Police Department established these interview sheets

25     is so that we don't need victims to come to the court

25

1    solely to testify to ownership and non-permission

2    information.

3              And, I'm simply admitting it for the

4    purpose of ownership and non-permission as that

5    interview is limited to.

6              And I also, in the alternative, have the

7    specific forms just indicating she's the account

8    owner.  And she didn't give the defendant permission

9    or anybody permission to take those funds.

10             MR. GOODMAN:  And in Philadelphia, we use

11   those forms.  I concede that.  If she wants to use the

12   form that's fine.  But to introduce the statement,

13   we're going above and beyond what we usually do in

14   Philadelphia which is the ownership and non-permission

15   form.

16             THE COURT:  So, I take it, the form

17   satisfies you.

18             MS. WALSH:  Your Honor, the form does

19   satisfy me.  It does indicate, however, in the

20   interview that nobody had permission.

21             THE COURT:  The argument about the son, if

22   that's what you're concerned about, it's a

23   non-sequitor.  It's just not relevant.

24             We'll take the form that counsel is not

25   objecting to.  And he's protecting his client's right

1    in doing that.  So the particular form, that's

2    agreeable to both parties, is C-3.

3            And I take it, you don't object to that

4    form, Counsel.

5            MR. GOODMAN:  That's a standard form in

6    Philadelphia.  I have no basis.

7            THE COURT:  It's admitted.

8            So with that, you rest.

9            MS. WALSH:  And those three exhibits moved

10   in, Commonwealth would rest for the preliminary

11   hearing.

12           THE COURT:  I'll hear you if you want any

13   kind of followup discussion.

14           MR. GOODMAN:  I'll make argument at this

15   point.  My argument is relatively straightforward,

16   Your Honor.  As indicated by the Court, during the

17   testimony here, the statements that were made by Judge

18   Eubanks to the investigator -- we're not saying for

19   the truth of the matter asserted or moreso in terms of

20   the effects and what they had on the investigator and

21   why she did what she did.

22           That having been said, I would argue to

23   the Court simply that, with that, from the testimony

24   of the investigator we have alleged transfers from

25   accounts to other accounts.

1          And we have, according to the records that

2    have been presented to this Court, a withdrawal that

3    occurred outside of Philadelphia County.

4          We don't know who, actually, was the

5    person who conducted or did those particular

6    transfers.  There's been no evidence to establish

7    connecting my client as the source or the individual

8    who actually did such transfers.

9          What we do know is that it ended up in an

10   account that happened to be under her name.  So we

11   don't know who the person that initiated it is, in

12   fact, the person who did this particular crime, which

13   is a transfer from the Eubanks' account into hers.

14         What we also know, Your Honor, is this.

15   We have photographs that were taken in Conshohocken.

16   Conshohocken which is, obviously, in Montgomery County

17   which is, obviously, not under the jurisdiction of the

18   Philadelphia courts.

19         And we have an individual that, according

20   to the investigator, is my client.  But, again, we're

21   looking at photographs that haven't been

22   authenticated.

23         We don't know whether or not they, in

24   fact, are true and accurate copies of how my client

25   looked on that particular day.

1              No interviews were ever conducted by

2     anyone at that particular bank to authenticate and to

3     establish their authenticity, and, really even having

4     a situation where we've even talked to a teller, on

5     that particular day, that serviced her.

6              But all of that being said, it still

7     happened in Conshohocken which is beyond the

8     jurisdiction of Philadelphia.

9              And there's been nothing presented to this

10    Court indicating that Montgomery County has seated

11    jurisdiction to Philadelphia.

12             So as it relates to the withdrawal that

13    allegedly occurred in Conshohocken, I would argue to

14    the Court there's no jurisdiction here.   There's a

15    proper place for it.   That's in Montco.   That's not

16    her.

17             And, Your Honor, as it relates to the

18    transfers, going back to my original argument that I,

19    initially, presented, namely, we have no evidence who

20    is the individual that did it.

21             I asked all those questions about the IP

22    addresses giving them the opportunity to establish,

23    oh, it was at a location that goes back to her or

24    something that was consistent with her account.

25             As they've already gone through and done

1  those checks.  They've not given Your Honor any of

2  that.  So we don't know whether or not it was her

3  account that was hacked by someone.

4          We can't speculate as far as jumping

5  through hoops and saying, well, it must be because.

6  Well, in the world of electronics, as Your Honor so

7  pointed out, the computer controls everything.

8          So, now, we need to find out who is in

9  control of the computer.  There's been no evidence

10  that's been presented to this Court that establishes

11  that nothing is connected to her.

12          And, that being said, I would argue to the

13  Court that these charges should be discharged both for

14  lack of jurisdiction as well as no identification, in

15  terms of, who is the individual that actually

16  committed the IP transfers.

17          MS. WALSH:  And, Your Honor, I would ask

18  that you hold the defendant for court as charged.

19  First of all, regarding the jurisdiction argument, as

20  Your Honor so aptly pointed out to the witness, the

21  computer system is located in Philadelphia.

22          Judge Eubanks is an account holder located

23  in Philadelphia.  The information regarding the change

24  to her account, and the transactions that occurred,

25  were sent to her address in Philadelphia.

1            That harm was felt in Philadelphia.   And

2    given that fact, Philadelphia does have proper

3    jurisdiction over this case.

4            In terms of the identification, and

5    whether or not it's linked to this defendant, what we

6    have is we have transfers going from Judge Eubanks'

7    account directly into the defendant's account.

8            And how we know that she was aware of

9    those transfers, because on the last day, when that

10   $2,100 transfer took place, she then went into the

11   branch and withdrew the money.

12           Where she previously had no money, she's,

13   now, in that branch in the photographs withdrawing

14   those funds.   So she was well aware that these funds

15   were being transferred.

16           And she swiftly moved to take them out of

17   her account.   So that she could access them.   So with

18   all reasonable inferences in favor of the

19   Commonwealth, at this level, Your Honor, I would ask

20   that you hold the defendant for court.

21           THE COURT:   Yes.

22           Again, Counsel, you've got some good

23   arguments.   But they're for a proceeding where the

24   Commonwealth's burden is a lot higher than it is

25   today.   And when I look at Exhibit No. 1, and I see

1   the withdrawal from the Eubanks' account, the transfer

2   to the Bonilla account and then a picture that I would

3   suggest your client is easily recognizable.

4            And on the same day, essentially, the

5   money comes out of the account, there is certainly

6   more than adequate evidence to determine that the

7   Commonwealth has met its evidentiary standard at this

8   level.

9            Again, what happens at the next level is a

10  different matter.  So the defendant is held for

11  court.  Now, you folks have to give me some help here

12  because I understand, Counsel, you're saying that

13  she's detained.  But she's not detained on this case.

14           She's detained on some other matter.

15           MR. GOODMAN:  Her bail it set on this case

16  at I believe $5,000.  And I would honestly be asking

17  for that to be reduced to sign own bond.

18           In that, she does have another matter

19  that's currently pending before His Honor Judge

20  Campbell.  And that's scheduled for trial in a week.

21           And on that particular case, the bail is

22  such that she's not going to make it.  However, I'm

23  anticipating that will be resolved by a non-trial

24  disposition.

25           So that being the case, I'm requesting the

1   bail be reduced to sign own -- or even if Your Honor

2   is inclined -- even potentially house arrest something

3   along those lines.

4           We'll know where she's at because she will

5   be on the Court's jurisdiction for some time as a

6   result of the matter that's currently in front of

7   Judge Campbell.

8           And, in terms of the potential threat to

9   society, et cetera, I would argue that having her in

10  custody serves no purpose.

11          MS. WALSH:  And, if I may, Your Honor, the

12  only thing that I would be asking that if we do

13  release the defendant that there be an order for house

14  arrest or some sort of electronic monitoring.

15          Because it is my understanding she

16  absconded from the Court in that other case.  So

17  that's my only concern, Your Honor.  I don't think she

18  needs to be in custody.  But I do want to keep some

19  sort of tabs on her as well.

20          MR. GOODMAN:  And I can address that, Your

21  Honor.  She's been my client, now, for a little over a

22  year or so.  And, in that time period, there have been

23  certain medical issues.  There was a mental breakdown

24  that  occurred since she's been in county custody.

25          THE COURT:  So let's do it this way,

1    Counsel, without putting her medical history on the

2    record.  The matter that she has pending in the Common

3    Pleas Court next week, do you have an anticipated

4    outcome of that matter.

5              MR. GOODMAN:  Yes, Your Honor.

6              That will be a non-trial disposition.  I

7    am in heavy contact with the Attorney General's

8    office.  And my client has already agreed to their

9    terms.  So I anticipate that that will be a plea.

10             And she will be placed on a period of

11   probation to allow her to make amends for that

12   particular incident.

13             THE COURT:  So, then, the amount of time

14   that she has been incarcerated, if she's getting a

15   probationary sentence, is that time then going to be

16   available to this particular case?

17             MR. GOODMAN:  That will be used by that

18   case.

19             THE COURT:  Would be used by the other

20   case.

21             MR. GOODMAN:  Yes, Your Honor.

22             THE COURT:  So, then, we'd be starting at

23   scratch with what the disposition, in this case, is

24   going to be.

25             MR. GOODMAN:  Yes, Your Honor.

1          THE COURT:  Now, again, I don't know how

2    your electronic home confinement works here.  In our

3    county, you have to satisfy our folks that you have

4    the correct setup to do electronic home confinement.

5          And if you can satisfy those requirements

6    then I would be okay with that.

7          MR. GOODMAN:  They have a similar

8    requirement here.  They just transitioned from the

9    land lines into a cellular-based system, where you

10   have a base station in your house.

11         And that's a collectivized cellular system

12   to a bracelet.  So it's similar.

13         THE COURT:  So I guess the two of you can

14   work it out.  I don't have any objection to her

15   receiving a bail that would put her out on electronic

16   home confinement.

17         Notwithstanding, her medical issue, if she

18   went missing on us once we don't want her going

19   missing on us twice without having taken some

20   significant effort to avoid that which the HC would

21   do.

22         MR. GOODMAN:  As a result of the prior

23   case, and the response that she received from Judge

24   Campbell, I don't anticipate that being the case in

25   the future.

35

1                THE COURT:  So what are the magic words

2    that we have to say to make all of this happen in

3    Philadelphia.

4                MR. GOODMAN:  I reduce bail to ROR with

5    electronic monitoring house arrest.

6                THE COURT:  Okay.

7                Fine.  So she's held for court on all

8    charges.  Her bail can be reduced to ROR subject to

9    her satisfying the requirements for electronic home

10   confinement as exists in Philadelphia.

11               If she cannot satisfy those requirements,

12   then the reduction in the bail from what it is to ROR

13   is a nullity.

14               MS. WALSH:  Thank you, Your Honor.

15               MR. GOODMAN:  Thank you.

16

17

18

19

20

21

22

23

24

25

36

1         C E R T I F I C A T E:

2                    I hereby certify that the

3    proceedings and evidence are contained fully and

4    accurately in the notes taken by me on the trial of

5    the above cause, and this copy is a correct transcript

6    of the same.

7

8

9

10

11    _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

12              BARRY HARRIS, Court Reporter

13              Dated:   JANUARY 23, 2018

14

15

16

17

18

19

20                    (The foregoing certification of this

21    transcript does not apply to any reproduction of the

22    same by any means, unless under the direct control

23    and/or supervision of the certifying reporter.)

24