# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| MERSADIES BONILLA, | : | CIVIL ACTION |
| --- | --- | --- |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 18-3293 |
| | : | |
| AMERICAN HERITAGE FEDERAL | : | |
| CREDIT UNION, | : | |
| Defendant. | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                          **August 17, 2018**

Pre-trial detainee Mersadies Bonilla sues the American Heritage Federal Credit Union (Credit Union) for allegedly violating consumer protection laws by, among other things, referring suspicious activity in her account to authorities thereby leading to criminal charges against her and by then participating in the related criminal investigation. As she presently awaits her criminal trial in state court arising from these charges, she also moves to proceed *in forma pauperis* and for the appointment of counsel. In the accompanying Order, we grant Ms. Bonilla leave to proceed *in forma pauperis*, dismiss her Complaint with leave to timely amend, and deny her Motion for the appointment of counsel.[1]

## I. Alleged Facts

Ms. Bonilla is a member of the Credit Union with a credit card account and a savings share account. In August 2016, Ms. Bonilla received deposits totaling $5,600 into her savings share account from the account of Joyce Eubanks, another Credit Union member. Although her *pro se* allegations are a bit difficult to understand, it appears the Credit Union contacted Ms. Eubanks who in turn filed a police report alleging someone fraudulently transferred $13,000

1

from her account to Ms. Bonilla's account. The Credit Union contacted the police, but Ms. Bonilla believes the Credit Union did "not conduct a full investigation" before doing so.[2]

On August 26, 2016, Ms. Bonilla attempted to close her credit card account with the Credit Union who referred her to the fraud department. Documents attached to her Complaint indicate Ms. Bonilla told Credit Union representatives of a romantic and business relationship with Ms. Eubanks' son and someone deposited the money into her account to repay Ms. Bonilla for money he owed her. Ms. Bonilla "gave a Philadelphia Police Docket number from [an] agreement made on July 1st of 2016 to [Credit Union's] Fraud Investigator that verified the investigators questions."[3] We cannot discern further specifics about the agreement or its import. The Credit Union told Ms. Bonilla she would be contacted by a Senior Fraud Investigator. The Credit Union did not tell her of law enforcement's role in the investigation. "[S]hortly after August 30th of 2016," the Credit Union "charged off [the] delinquency balance of [her] account."[4]

On July 28, 2018, the Commonwealth charged and arrested Ms. Bonilla with forgery, theft, and other charges related to the transfer of money from Ms. Eubanks' account.[5] A Credit Union Senior Fraud Investigator testified at her preliminary hearing and the Philadelphia County Municipal Court held her over for trial.[6] Ms. Bonilla is currently awaiting trial.[7]

In the middle of this state court criminal proceeding, Ms. Bonilla *pro se* now sues the Credit Union claiming it should not have referred her case to the police. She alleges the Credit Union "did not keep the verbal agreement to contact [her]" or inform her police were involved in the investigation.[8] She also alleges "[Credit Union] took funds from a paid off credit card account after already filing criminal charges in attempt to reclaim $5,600 (which funds were deposited into [her] savings share account), as well as reported invalid debt via consumer credit

2

reporting agencies which is a violation of Truth in Lending Act . . . by failing to investigate [her] allegations of the billing and adjustment error, emails to fraud investigator constitute as valid written notice under Fair Credit Billing Act, . . . where emails contained that her online account statements contained billing errors . . . ."[9]

Ms. Bonilla seeks recovery under the Fair Debt Collection Practices Act (FDCPA), the Truth in Lending Act (TILA), the Fair Credit Billing Act (FCBA), and the Federal Credit Union Act (FCUA). She also raises state claims under Pennsylvania's Fair Credit Extension Uniformity Act and Pennsylvania's Unfair Trade Practices and Consumer Protection Law, as well as tort claims for conversion and unjust enrichment. Ms. Bonilla asks we declare the Credit Union violated her federal rights, for damages, and "[deletion of] AHFCU tradeline on [her] credit report."[10]

## II. Analysis

Ms. Bonilla is granted leave to proceed *in forma pauperis* because it appears she is not capable of paying the fees to commence this civil action.[11]

As Ms. Bonilla is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) requires we dismiss the Complaint if it fails to state a claim unless Ms. Bonilla pleads "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[12] "[M]ere conclusory statements[] do not suffice."[13] We may also dismiss claims based on an affirmative defense if the affirmative defense is obvious from the face of the complaint.[14] Further, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."[15] As Ms. Bonilla is proceeding *pro se*, we construe her allegations liberally.[16]

We are also bound by Rule 8(a) of the Federal Rules of Civil Procedure requiring Ms. Bonilla plead "a short and plain statement of the claim showing [she]is entitled to relief." We

3

may *sua sponte* dismiss a complaint if "the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised."[17] Rule 8 "requires that pleadings provide enough information to put a defendant on sufficient notice to prepare their defense and also ensure that the Court is sufficiently informed to determine the issue."[18]

### A. We dismiss debt collection claims under the FDCPA.

The FDCPA prohibits debt collectors from making false, deceptive, or misleading representations to collect a debt.[19] "Importantly, it applies only to 'debt collectors . . . .'"[20] Creditors—*i.e.*, entities offering or extending credit creating a debt or entities to whom a debt is owed—are generally not subject to the FDCPA.[21] Ms. Bonilla never alleges Credit Union is a debt collector, attempted to collect a debt from her, or did anything we could possibly be considered as violating the FDCPA. We dismiss her debt collection claims.

### B. We dismiss Ms. Bonilla's FCUA claims.

Ms. Bonilla attempts to sue under the Federal Credit Union Act providing "for the chartering and regulation of federal credit unions."[22] The FCUA does not provide for a private right of action for the type of claims Ms. Bonilla is attempting to assert.[23] We dismiss her FCUA claims.

### C. We dismiss Ms. Bonilla's TILA and FBCA claims.

Ms. Bonilla alleges Credit Union violated TILA's prohibition on offsets, 15 U.S.C. § 1666h. The statute provides:

> A card issuer may not take any action to offset a cardholder's indebtedness arising in connection with a consumer credit transaction under the relevant credit card plan against funds of the cardholder held on deposit with the card issuer unless—
>
> (1) such action was previously authorized in writing by the cardholder in accordance with a credit plan whereby the cardholder agrees periodically to pay debts incurred in his open end credit account by permitting the card issuer

4

periodically to deduct all or a portion of such debt from the cardholder's deposit account, and

(2) such action with respect to any outstanding disputed amount not be taken by the card issuer upon request of the cardholder.[24]

"This provision on offsets 'is presented as an absolute bar preventing a card issuer from taking action to offset credit card debt against funds held on deposit with the card issuer'" unless the cardholder agrees in writing to periodic deductions.[25]

Ms. Bonilla also cites a provision of Regulation Z, which implements the TILA, including § 1666.[26] The specific provision to which Ms. Bonilla refers prohibits certain offsets by a card issuer as follows:

(1) A card issuer may not take any action, either before or after termination of credit card privileges, to offset a cardholder's indebtedness arising from a consumer credit transaction under the relevant credit card plan against funds of the cardholder held on deposit with the card issuer.

(2) This paragraph does not alter or affect the right of a card issuer acting under state or federal law to do any of the following with regard to funds of a cardholder held on deposit with the card issuer if the same procedure is constitutionally available to creditors generally: Obtain or enforce a consensual security interest in the funds; attach or otherwise levy upon the funds; or obtain or enforce a court order relating to the funds.

(3) This paragraph does not prohibit a plan, if authorized in writing by the cardholder, under which the card issuer may periodically deduct all or part of the cardholder's credit card debt from a deposit account held with the card issuer (subject to the limitations in § 226.13(d)(1)).[27]

"TILA's express purpose is to 'assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit.'"[28] The FBCA amended the TILA to "impose[] on creditors 'requirements . . . for the correction of billing errors.'"[29]

We cannot understand the basis for Ms. Bonilla's claim. Ms. Bonilla alleges Credit Union "charged off delinquency balance of [her] account shortly after August 30th of 2016."[30]

5

Another allegation appears relevant here, *i.e.*, Ms. Bonilla's asserts Credit Union "took funds from a paid off credit card account after already filing criminal charges in attempt to reclaim $5,600 (which funds were deposited into [her] savings share account) . . . ."[31]

Despite extended efforts, it is difficult to discern from Ms. Bonilla's allegations how, exactly, the Credit Union offset Ms. Bonilla's account or whether the offset plausibly violated the above regulations. It is also difficult to discern another plausible basis for a TILA claim from the Complaint. If Ms. Bonilla is alleging Credit Union violated TILA or its regulations by contacting the police, participating in the criminal investigation, or by failing to disclose to her it had contacted the police, she is mistaken, as nothing about this conduct suggests a basis for a TILA claim.

In any event, it appears from the face of her Complaint, Ms. Bonilla's claims are time-barred. Ms. Bonilla's TILA claims are governed by a one-year statute of limitations, which begins to run on the date of the alleged violation.[32] Under the prison mailbox rule, a prisoner's complaint is considered filed at the time she hands it over to prison authorities for forwarding to the Court.[33] The statute of limitations for TILA claims "is not jurisdictional and is therefore subject to equitable tolling."[34]

Although it is not clear when Ms. Bonilla presented her Complaint to prison authorities for mailing, it is dated July 31, 2018, so we assume this is the date of filing for purposes of this opinion. As the charge off in question occurred "shortly after August 30th of 2016," any claims based on the conduct are time-barred since Ms. Bonilla did not file her Complaint until almost two years later.[35]

Nothing in Ms. Bonilla's Complaint, as pled, plausibly suggests we should toll the statute of limitations.[36]

6

### D. We lack jurisdiction over the state law claims.

The only independent basis for the Court's jurisdiction over state law claims under 28 U.S.C. § 1332(a), which grants a district court jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." Diversity jurisdiction requires "complete diversity," which in turn requires "no plaintiff be a citizen of the same state as any defendant."[37] Ms. Bonilla alleges she is a Pennsylvania citizen and Credit Union "is a federally chartered credit union and falls under the laws of the Commonwealth of Pennsylvania having its principal place of business . . . [in Philadelphia]."[38]

"'The general rule with respect to [federal credit unions] is that... [they are] not considered to be a citizen of any particular state for the purpose of establishing diversity of citizenship.'"[39] Rather, they are "national citizens" not amenable to jurisdiction under § 1332(a) unless "the credit union's activities are 'localized' within a single state."[40] If Credit Union can be considered a citizen of any state, it would be Pennsylvania, which would result in a lack of diversity. There is no independent jurisdictional basis for Ms. Bonilla's state claims.[41]

### III. Conclusion

We dismiss Ms. Bonilla's Complaint in the accompanying Order without prejudice should she be able plead a timely, plausible basis for a claim within the Court's jurisdiction. Ms. Bonilla's motions for counsel are denied without prejudice at this time.[42]

---

[1] Shortly after filing her Complaint, a Motion to proceed *in forma pauperis*, and a Motion for appointment of counsel, Ms. Bonilla filed corrected versions of those documents because the original versions she filed identified this Court as the "Eastern District of Philadelphia" rather than the Eastern District of Pennsylvania.

[2] ECF Doc. No. 2 at 4.

[3] *Id.*

[4] *Id.* at 5.

[5] *See Commonwealth v. Bonilla*, Docket No. MC-51-CR-0022470-2017 (Phila. Municipal Ct.).

[6] *Id.*

[7] *See Commonwealth v. Bonilla*, Docket No. CP-51-CR-0000237-2018 (Phila. Ct. of Common Pleas).

[8] ECF Doc. No. 2 at 4.

[9] *Id.* at 5.

[10] It does not appear Ms. Bonilla intends to bring a claim under the Fair Credit Reporting Act. "The FCRA is intended to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *See SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 357 (3d Cir. 2011). Although Ms. Bonilla alleges Credit Union conveyed inaccurate information to credit reporting agencies impacting and her credit report, it is not clear what information was passed along and why the information was inaccurate. Even if Ms. Bonilla intended to raise a claim under the FCRA, her Complaint does not state a claim. *Id.* at 6.

[11] As Ms. Bonilla is presently incarcerated on these charges, she remains obligated to pay the filing fee in installments under the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

[12] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).

[13] *Id.*

[14] *See Ray v. Kertes*, 285 F.3d 287, 297 (3d Cir. 2002); *see also McPherson v. United States*, 392 F. App'x 938, 943 (3d Cir. 2010).

[15] Fed. R. Civ. P. 12(h)(3).

[16] *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

[17] *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) (quotations omitted).

[18] *Fabian v. St. Mary's Med. Ctr.*, No. Civ. A. 16-4741, 2017 WL 3494219, at *3 (E.D. Pa. Aug. 11, 2017) (quotations omitted).

[19] *See* 15 U.S.C. § 1692e.

[20] *Tepper v. Amos Fin., LLC*, No. 17-2851, 2018 WL 3733862, at *1 (3d Cir. Aug. 7, 2018).

[21] *Id.*

[22] *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 513 F. Supp. 2d 190, 192 (M.D. Pa. 2007).

[23] *See Harris v. Police & Fire Fed. Credit Union*, No. CIV. A. 98-5175, 1999 WL 96006, at *4 n.10 (E.D. Pa. Feb. 24, 1999) ("[T]he fact that defendant Police and Fire Federal Credit Union is a federal credit union, established pursuant to 12 U.S.C. § 1752, et seq., does not create a federal cause of action."); *Jones v. Philadelphia Fed. Credit Union*, No. CIV. A. 92-2155, 1992 WL 132500, at *1 (E.D. Pa. June 3, 1992) (citing cases holding that no express or implied right of action exists under FCUA); *Nat'l Temple Non-Profit Corp. v. Nat'l Temple Cmty. Fed. Credit Union*, 603 F. Supp. 807, 809 (E.D. Pa. 1985) (holding that "Congress did not intend to create a private cause of action" under the FCUA).

[24] *Id* § 1666h(a).

[25] *White v. Chase Bank USA, N.A.*, No. 5:16-CV-00176-BR, 2017 WL 1131898, at *4 (E.D.N.C. Mar. 24, 2017).

[26] *See Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 198 (2011); *Martino v. Am. Airlines Fed. Credit Union*, 121 F. Supp. 3d 277, 282 (D. Mass. 2015) ("The TILA, including the prohibition on offsets, is implemented through regulations known as Regulation Z, codified at 12 C.F.R. § 226.").

[27] 12 C.F.R. § 226.12(d).

[28] *Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 432 (3d Cir. 2018) (quoting *Vallies v. Sky Bank*, 432 F.3d 493, 495 (3d Cir. 2006)).

[29] *Id.* (quoting *Am. Express Co. v. Koerner*, 452 U.S. 233, 234 (1981)).

[30] ECF Doc. No. 2 at 5.

[31] *Id.*

[32] *See* 15 U.S.C. § 1640(e); *Hernandez v. Rodriquez*, No. CV-13-01289-PHX-GMS, 2014 WL 11515008, at *3 (D. Ariz. Apr. 30, 2014) (claims under § 1666h(a) and regulation Z governed by TILA's one-year statute of limitations).

[33] *See Houston v. Lack*, 487 U.S. 266, 276 (1988).

[34] *Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499, 505 (3d Cir. 1998).

[35] ECF Doc. No. 2 at 5.

[36] *See Williams v. EMC Mortg. Corp.*, No. 12-1215, 2013 WL 1874952, at *4 (E.D. Pa. May 3, 2013) (noting "equitable tolling may be appropriate: (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights); or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum").

[37] *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010).

[38] ECF Doc. No. 2 at 4.

[39] *Broadbridge Fin. Sols., Inc. v. CNBS, LLC*, No. 15 CIV. 4978 (PAC), 2016 WL 1222339, at *1 (S.D.N.Y. Mar. 23, 2016) (quoting *TCT Fed. Credit Union v. Cumis Inc. Soc., Inc.*, No. 10-150, 2011 WL 817496, at *2 (N.D.N.Y. Mar. 2, 2011)) (alteration in original).

[40] *Id.* (quoting *TCT Fed. Credit Union*, 2011 WL 817496, at *2); *see also Feuchtwanger Corp. v. Lake Hiawatha Fed. Credit Union*, 272 F.2d 453, 455 (3d Cir. 1959) (agreeing with conclusion assessing citizenship of federal credit union, the "localization of activity within a particular state sufficed to make a federal corporation a citizen of that state").

[41] We decline to exercise supplemental jurisdiction in light of the dismissal of Ms. Bonilla's federal claims.

[42] *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (in determining whether appointment of counsel is appropriate, the Court should first determine whether plaintiff's lawsuit has a legal basis).