# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MERSADIES BONILLA,** | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| | : | |
| v. | : | **NO. 18-3293** |
| | : | |
| **AMERICAN HERITAGE FEDERAL** | : | |
| **CREDIT UNION,** | : | |
| Defendant. | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                                 **November 26, 2018**

Sitting in jail awaiting her criminal trial in state court for conduct tangentially raised before us, Philadelphian Mersadies Bonilla *pro se* sues her former credit union for withdrawing money from her account to pay her credit card delinquency and to reimburse money allegedly taken from another member's account as well as adding "overdraft protection." Her *pro se* claim rambles through a series of allegedly related acts. We understand some of the episodic facts, but we cannot make sense of her theories. As this is her third attempt to plead a claim, we dismiss with prejudice all claims under federal law involving the withdrawal of money from her account to pay delinquencies and to reimburse money allegedly taken from another member's account. As we cannot possibly guess as to the nature of claims relating to her overdraft protection account, we also must dismiss this inadequately plead claim. But we will allow Ms. Bonilla one last attempt to plead a cognizable and timely claim relating to allegations of an "overdraft protection account" and supplemental state law claims.

## I. Facts alleged in third amended complaint.

On August 13, 2016, someone or something made deposits of $3,000 and $500 into Ms. Bonilla's share savings account held with the American Heritage Federal Credit Union ("Credit Union") drawn from the account of Joan Eubanks, another Credit Union member.[1] On August 17, 2016, an unidentified person transferred another $2,100 from Ms. Eubank's account to Ms. Bonilla's account ("August 2016 transactions").[2]

On August 19, 2016, Ms. Eubanks contacted the Credit Union about the transfers.[3] The Credit Union recommended she file a police report about the incident.[4] According to the police, Ms. Eubanks claimed Ms. Bonilla transferred $13,000 from Ms. Eubanks's bank account to her account.[5] On August 26, 2016, Ms. Bonilla tried to close her credit card account with the Credit Union. The Credit Union referred her to its Fraud Department.[6] Ms. Bonilla claims she paid off the credit card balance on August 13, 2016.[7] During the conversation with the Fraud Department, "[Ms.] Bonilla gave a Philadelphia Police Docket number from [an] agreement made on July 1, 2016 to [Credit Union's] Fraud Investigator that verified the investigator's questions via email."[8] We do not know or cannot guess as to the terms of this agreement which seemingly would have occurred weeks before the alleged transfers.

Ms. Bonilla told the Credit Union's Fraud Investigator she had a romantic and business relationship with Ms. Eubanks's son, and the son transferred the money from Ms. Eubanks's account to Ms. Bonilla's account to satisfy Ms. Eubanks's debt to her.[9] Someone told Ms. Bonilla a Senior Fraud Investigator would contact her after he looked at the file.[10] The Credit Union did not describe the Philadelphia police department's involvement in an investigation. Ms. Bonilla "took [Credit Union] Investigator's verbal word(s) on investigating [Ms. Bonilla's] one savings

share and secured credit card account due to being a member of their federally charted credit union."[11]

Sometime before July 2017, the Credit Union notified Ms. Bonilla of delinquencies in her credit card payments.[12] Ms. Bonilla emailed the Credit Union's Fraud Investigator on August 26, 2016 and wrote to the Credit Union on October 17, 2016.[13] She does not plead what she asked the Credit Union. The Credit Union did not respond.[14]

Almost a year after the alleged transfers, the Philadelphia Police arrested Ms. Bonilla for forgery, theft by unlawful taking, identity theft, and other related charges.[15] One of the Credit Union's Senior Fraud Investigators testified at Ms. Bonilla's preliminary hearing in the Philadelphia Court of Common Pleas. The judge found enough evidence to hold Ms. Bonilla for trial.[16] Ms. Bonilla is currently awaiting her trial.[17] Ms. Bonilla did not contact a credit reporting agency to correct her credit report during the pending criminal case because she wanted to "show full proof with the outcome of [the] case."[18]

Ms. Bonilla additionally alleges the Credit Union "reported a charged off 'overdraft protection account' every month since January 2017 in the amount of $3,334 that [Ms. Bonilla] did not sign up for account number 1000000622661**** calling it 'deposit overdraft protection"[19] ("overdraft protection transactions"). The Credit Union last charged off the account on August 1, 2018.[20] Ms. Bonilla alleges she never obtained overdraft protection with her savings account.[21]

On July 31, 2018,[22] Ms. Bonilla sued the Credit Union for its actions in the August 2016 transactions and overdraft protection transactions alleging violations of the Federal Credit Union Act, Credit Union Membership Access Act, Truth in Lending Act and Regulation Z, Fair Credit Billing Act, Pennsylvania Fair Credit Uniformity Act, Pennsylvania Unfair Trade Practices and Consumer Protection Law, and common law conversion and unjust enrichment.[23] Ms. Bonilla

3

asks us to declare the Credit Union's actions violate her constitutional rights; declare the Credit Union's actions violate the federal and state statutes under which she seeks relief; declare the Credit Union must delete its tradeline on her credit report and mark all judgments obtained as satisfied on her credit report and forgive all debt shown on her credit report; grant her compensatory and punitive damages; and, award her attorney fees and costs.[24]

## II. Analysis[25]

The Credit Union moves to dismiss Ms. Bonilla's third amended complaint for six reasons: (1) insufficient process of the exhibits referenced in the third amended complaint under Federal Rule of Civil Procedure 12(b)(4); (2) insufficient service of process of the third amended complaint under Federal Rule of Civil Procedure 12(b)(5); (3) failure to state a claim under the Federal Credit Union Act under Federal Rule of Civil Procedure 12(b)(6); (4) failure to state a claim under the Credit Union Membership Access Act under Rule 12(b)(6); (5) failure to state a claim under the Truth in Lending Act, Fair Credit Billing Act, and Regulation Z as barred by the statute of limitations under Rule 12(b)(6) ; and (6) lack of subject matter jurisdiction over Ms. Bonilla's state law claims under Federal Rule of Civil Procedure 12(b)(1).

In response to the Credit Union's insufficient process and insufficient service of process arguments, Ms. Bonilla contends she provided the United States Marshal Service with the appropriate form and process; the United States Marshal properly served a "general agent" of the Credit Union at its Philadelphia location; she is entitled to rely on service by the United States Marshal; and, we should afford her more latitude because she is a *pro se* plaintiff.[26] In response to the Credit Union's Rule 12(b)(6) motions, Ms. Bonilla contends the exhibits attached to her complaint demonstrate she has a plausible claim for relief sufficient to survive dismissal and, with respect to the statute of limitations argument on the Truth in Lending Act and Fair Credit Billing

4

Act claims, she did not learn of the Credit Union's "fraudulent acts" with regard to her credit card and savings account until January 11, 2018 making her August 3, 2018 complaint timely.[27]

Although not entirely clear, Ms. Bonilla's response to the Credit Union's motion seems to suggest she intends to proceed only on her claims under the Fair Credit Billing Act and the Truth in Lending Act, identifying claims under these statutes "are the claims that [she] is asking [the court] not to dismiss for the reasons" in her response and third amended complaint.[28]

### A. We deny the Credit Union's motion to dismiss for insufficient process.

The Credit Union first moves under Federal Rule of Civil Procedure 12(b)(4) to dismiss the third amended complaint for "insufficient process." The Credit Union argues the third amended complaint is "insufficient process" because it refers to, but does not attach, Exhibits A through F. In response to the Credit Union's motion, Ms. Bonilla filed Exhibits A through F along with her response.[29]

A motion under Rule 12(b)(4) challenges the *form* of process, as contrasted with the *method* of serving process.[30] It is a "'fairly rare' defense 'concern[ing] the form of the process rather than the manner or method of its service."[31] "A Rule 12(b)(4) motion is proper only to challenge the noncompliance with the provisions of Rule 4(b) or any applicable provision incorporated by Rule 4(b) that deals specifically with the content of the summons."[32]

Here, the Credit Union complains about exhibits, not the summons. As our colleague Judge Leeson explained, "a pre-answer defense of 'insufficient process' is limited to challenges to the contents of the summons" because the "meaning given to the word 'process' by the Federal Rules, ... equates the term with a summons or its equivalent."[33] The Credit Union has not shown insufficient process of summons. We deny its motion on this basis.

5

### B. We deny the Credit Union's motion to dismiss for improper service of process.

The Credit Union next moves to dismiss the third amended complaint under Rule 12(b)(5) arguing "insufficient service of process." There is no dispute the United States Marshals served Lauren Fisher, "desk representative," at the Credit Union's location on Red Lion Road in Philadelphia.[34] The Credit Union, however, contends this is not proper service because the third amended complaint was not served in accordance with state law under Rule 4(h)(1)(A) or served on a managing or general agent, or any other agent authorized by appointment or law to receive service of process under Rule 4(h)(1)(B).

Federal Rule 4(h) provides two methods by which "a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served." Under Rule 4(h)(1), an entity may be served "in the manner prescribed by Rule 4(e)(1) for serving an individual" *or* "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process ...."[35]

As referenced in Rule 4(h)(1), Rule 4(e)(1) provides service may be made by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." This requires the application of Pennsylvania's service rules. Pennsylvania Rule of Civil Procedure 424 provides for service of original process upon a corporation by "handing a copy" to any of the three categories of persons: "(1) an executive officer, partner or trustee of the corporation or similar entity, or (2) the manager, clerk or other person for the time being in charge of any regular place of business or activity of the corporation or similar entity, or (3) an agent authorized by the corporation or similar entity in writing to receive service of process for it."[36]

6

The party asserting the validity service bears the burden of proof.[37] Ms. Bonilla responds only she is entitled to rely on service by the United States Marshal Service, citing *Olsen v. Mapes* from the United States Court of Appeals for the Tenth Circuit.[38] In *Olsen*, the court of appeals reversed the district court's dismissal of a complaint for failing to comply with the service rules of Rule 4. The court of appeals found a plaintiff proceeding *in forma pauperis* is entitled to rely on service by the United States Marshal, and because there is no evidence the plaintiffs "failed to cooperate with the U.S. Marshals or were otherwise not entitled to their service, we find they were not culpable for their failure to comply with the Federal Rules of Civil Procedure or the court's orders."[39]

Our court of appeals, relying on *Olsen v. Mapes*, similarly reversed a district court's dismissal of two defendants from an action for failure of service.[40] In *Jones*, a prisoner proceeding *in forma pauperis* brought an action under 42 U.S.C. §1983 alleging an assault in prison. Two defendants were never served, and the district court "constructively dismiss[ed]" them from the action. Our court of appeals held "[t]he IFP statute specifically vests the responsibility for service with the court and its officers ... [t]hus, a failure to serve should not prejudice a faultless plaintiff."[41]

There is no dispute Ms. Bonilla, while in prison, provided the United States Marshal Service with the USM 285 form and the complaint, as directed by our order.[42] We decline to hold her culpable for insufficient service of process, if any. Indeed, we find hand delivery of process on Ms. Fisher, the "desk representative" at the Credit Union's Red Lion Road office, service upon a "manager, clerk or other person for the time being in charge of any regular place of business" as provided in Pennsylvania Rule 424(2). Pennsylvania courts allow service of process on a receptionist at a defendant's usual place of business sufficient.[43]

7

### C. We dismiss Ms. Bonilla's Federal Credit Union Act claims.

The Credit Union moves to dismiss claims under the Federal Credit Union Act[44] because we previously dismissed this claim with prejudice.[45] In our August 17, 2018 memorandum, we dismissed Ms. Bonilla's claims under Federal Credit Union Act with prejudice because the statute does not private right of action for the type of claims Ms. Bonilla attempts to assert.[46] To the extent Ms. Bonilla attempts to bring claims under the Federal Credit Union Act, they are dismissed for the reasons in our August 17, 2018 memorandum.

### D. We dismiss Ms. Bonilla's Credit Union Membership Access Act claim.

The Credit Union moves to dismiss under Rule 12(b)(6) Ms. Bonilla's claims under the Credit Union Membership Access Act,[47] arguing she fails to plead any basis to support such a claim or cite the section of the statute on which she relies, and otherwise fails to meet the pleading requirements of Federal Rule of Civil Procedure 8(a)(2).

The Credit Union Membership Access Act amended the Federal Credit Union Act in 1998 to "clarify existing law with regard to the field of membership of Federal credit unions, to preserve the integrity and purpose of Federal credit unions, to enhance supervisory oversight of insured credit unions, and for other purposes."[48] We already determined there is no private right of action for Ms. Bonilla's claims under the Federal Credit Union Act. We again find no private right of action under the Credit Union Membership Access Act amendment to the Federal Credit Union Act.

### E. We dismiss Ms. Bonilla's Truth in Lending Act, Fair Credit Billing Act, and Regulation Z claims relating to the August 2016 transactions as barred by the statute of limitations.

The Credit Union moves to dismiss the remaining federal claims under the Truth in Lending Act,[49] its implementing regulation known as "Regulation Z,"[50] and the Fair Credit Billing

8

Act.[51] Ms. Bonilla alleges the Credit Union "took funds from a paid off credit card account" after filing criminal charges in an attempt to recover the $5,600; reported invalid debt to consumer credit reporting agencies; and failed to investigate her allegations of error all in violation of the Truth in Lending Act and Fair Credit Billing Act, 15 U.S.C. §§ 1666, 1666(b)(1), (2), (4), 1666(c), and "1666(h)."[52] The Credit Union asserts Ms. Bonilla's claims are barred by the one-year statute of limitations for claims under the Truth in Lending Act.

### *Fair Credit Billing Act*

Congress enacted the Truth in Lending Act to "assure a meaningful disclosure of credit terms so [ ] the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit."[53] The Fair Credit Billing Act "protect[s] the consumer against inaccurate and unfair credit billing and credit card practices,"[54] by, *inter alia*, requiring credit card issuers to correct billing errors.[55] A plaintiff may recover actual damages, statutory damages, costs, and attorney's fees under the Truth in Lending Act and Fair Credit Billing Act (the "Act").[56]

Section 1666 of the Act imposes an obligation upon creditors to correct billing errors; Section 1666(b)(1), (2), and (4) identifies a "billing error" as "a reflection on a statement of an extension of credit which was not made to the obligor or, if made, was not in the amount reflected on such statement"; "a reflection on a statement of an extension of credit for which the obligor requests additional clarification including documentary evidence thereof"; and "the creditor's failure to reflect properly on a statement a payment made by the obligor or a credit issued to the obligor"; Section 1666(c) allows a creditor to include a disputed amount on an account statement where the creditor indicates payment of the amount is not required pending resolution of the billing

9

error; and Section 1666h prohibits credit card issuers from offsetting a cardholder's indebtedness from funds held on deposit unless the cardholder authorizes such offset in writing.

The statute of limitations for claims under the Truth in Lending Act, including claims under the Fair Credit Billing Act and Regulation Z, is one year "from the date of the occurrence of the violation."[57]

### *Ms. Bonilla seeks equitable tolling of the one-year statute of limitations.*

In response to the Credit Union's motion to dismiss based on the statute of limitations, Ms. Bonilla argues we should apply the doctrine of equitable tolling to save her untimely claims. To rescue her Truth in Lending Act claims under equitable tolling, Ms. Bonilla must show "(1) [ ] "the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) [ ] the plaintiff in some extraordinary way has been prevented from asserting [her] rights; or (3) [ ] the plaintiff has timely asserted [her] rights mistakenly in the wrong forum."[58]

To analyze whether Ms. Bonilla's claims are equitably tolled requires an understanding of her allegations the Credit Union violated Sections 1666 and 1666h of the Truth in Lending Act relating to the August 2016 transactions. In response to the Credit Union's motion to dismiss, Ms. Bonilla clarifies her claims against it as "fraudulent billing" of two accounts "that are not reported as disputed (one of which [is] currently under dispute by The Commonwealth of Pennsylvania Court of Common Pleas ..."[59] Ms. Bonilla points us to the allegations in her Third Amended Complaint at paragraphs six through sixteen.[60]

In those paragraphs, Ms. Bonilla alleges she received two deposits into her savings account at the Credit Union from another member's account on August 13, 2016 and a third deposit on August 17, 2016.[61] Ms. Bonilla alleges the Credit Union notified Philadelphia police two days later, on August 19, 2016, and reported a transfer of $13,000 from Ms. Eubanks's account to Ms.

Bonilla's account.⁶² Ms. Bonilla called the Credit Union on August 26, 2016 to close her "credit card account" and the Credit Union referred Ms. Bonilla to its "Fraud Department."⁶³

Ms. Bonilla alleges she gave a "docket number" from a July 1, 2016 "agreement" with Philadelphia police to the Credit Union's "Fraud Investigator"; the Credit Union's Fraud Investigator told her a "Senior Fraud Investigator" would contact her after "look[ing] at the file"; the Credit Union's Fraud Investigator told Ms. Bonilla her "secured credit card and savings share account were under investigation by [the Credit Union] only"; and the Credit Union's Fraud Investigator failed to tell Ms. Bonilla of a police investigation into the August 13 and August 17, 2016 transactions, instead taking the Credit Union Fraud Investigator's "verbal words."⁶⁴ Ms. Bonilla alleges the Credit Union did not keep its "verbal agreement" to contact her and instead contacted Philadelphia police leading to her arrest on July 28, 2017.⁶⁵

Ms. Bonilla alleges she learned from a credit reporting agency of a delinquency on her credit card account at the Credit Union.⁶⁶ Ms. Bonilla alleges she mailed a written letter to the Credit Union on October 17, 2016 along with her August 26, 2016 email requesting an investigation from the Credit Union's Fraud Investigator.⁶⁷ Ms. Bonilla alleges the Credit Union failed to respond to her request for investigation and failed to conduct a "full investigation" before contacting Philadelphia police.⁶⁸

Ms. Bonilla argues she could not have brought a Fair Credit Billing Act claim until January 11, 2018, the date of her preliminary hearing in her criminal action pending in the Philadelphia Court of Common Pleas. She alleges the Credit Union's witness and "Senior Fraud Investigator" Tracey Rambo "could not prove" Ms. Bonilla's fraud as to the August 2016 transactions. Ms. Bonilla argues she "was not aware" of the Credit Union's fraud until the January 11, 2018 preliminary hearing.⁶⁹

11

We previously dismissed the same claims alleged in Ms. Bonilla's original complaint.[70] In our memorandum dismissing Ms. Bonilla's Fair Credit Billing Act claims, we found even if her allegations are plausible under the Act, they appeared to be time-barred from the face of the complaint.[71] We found the complaint, as pleaded then, failed to plausibly suggest we should toll the statute of limitations based on equitable tolling. We dismissed Ms. Bonilla's complaint without prejudice to file an amended complaint to plead a possible basis for a timely claim within our jurisdiction.[72]

Ms. Bonilla does not provide us with a basis to equitably toll her Fair Credit Billing Act claims. She does not explain how the Credit Union actively mislead her with respect to her claim, or how she "in some extraordinary way has been prevented from asserting" her rights, or she timely asserted her rights but mistakenly in the wrong forum. At best, Ms. Bonilla disagrees with testimony of Ms. Rambo, the Credit Union's witness, at the January 11, 2018 preliminary hearing, contending the Credit Union "could not prove" she "fraudulently" made the August 2016 transactions. This does not meet any of the three conditions for equitable tolling. The Credit Union did not have to "prove" anything in Ms. Bonilla's criminal proceeding which has nothing to do with Ms. Bonilla's rights under the Fair Credit Billing Act.

Ms. Bonilla could have brought a claim well before the preliminary hearing because she had knowledge the Credit Union debited her account. Ms. Bonilla's third amended complaint alleges she learned of the Credit Union's charge on her account from a credit monitoring agency and she mailed a letter to the Credit Union on October 17, 2016 challenging its charges.[73] She nevertheless waited until July 31, 2018 to file a lawsuit against the Credit Union.

Having previously afforded Ms. Bonilla an opportunity to file an amended complaint pleading a plausible basis for a timely claim within our jurisdiction and considering her multiple

amended complaints failing to do so, we decline to permit Ms. Bonilla an opportunity to file a fourth amended complaint to allege these claims. We accordingly grant the Credit Union's motion to dismiss the Truth in Lending Act, Fair Credit Billing Act, and Regulation Z claims relating to the August 2016 transactions with prejudice.

### F. We grant the Credit Union's motion relating to the overdraft protection account but allow Ms. Bonilla to amend her complaint to plead a plausible basis for this claim.

Ms. Bonilla's third amended complaint alleges the Credit Union "reported a charged off 'overdraft protection account' every month since January 2017 in the amount of $3,334 that [Ms. Bonilla] did not sign up for account number 1000000622661**** calling it 'deposit overdraft protection"[74] She alleges the Credit Union continues to charge her savings account with overdraft protection as evidenced by a Trans Union credit report showing the "last date update" on August 1, 2018.[75] The Credit Union does not address this allegation in its motion to dismiss.

We have no idea under Rule 8 to understand how these facts state a claim. As we cannot speculate as to whether this is a claim, we must dismiss this claim. But we dismiss this claim without prejudice to allow Ms. Bonilla to timely amend her complaint one last time to plead a timely and plausible basis for a claim within our jurisdiction based on the "overdraft protection account."

### G. We grant the Credit Union's motion to dismiss Ms. Bonilla's remaining state law claims for lack of jurisdiction without prejudice.

The Credit Union asks we dismiss Ms. Bonilla's state law claims for lack of subject matter jurisdiction; claims under the Pennsylvania Fair Credit Uniformity Act, Pennsylvania Unfair Trade Practices and Consumer Protection Law, and common law conversion and unjust enrichment. It contends we lack subject matter jurisdiction over the state law claims because the parties are not diverse, citing our August 17, 2018 memorandum dismissing Ms. Bonilla's original complaint.

As we dismiss all federal claims, and given the early stages of this case, we presently decline to exercise supplemental jurisdiction over these state law claims. Although we dismiss all federal claims relating to the August 2016 transaction with prejudice, we are allowing Ms. Bonilla one last opportunity to timely and plausibly allege a claim under a federal statute relating to the overdraft protection account. As Ms. Bonilla may plead a federal question in a fourth amended complaint, we allow Ms. Bonilla to also plead state law claims in the fourth amended complaint.

### III. Conclusion

In the accompanying Order, we dismiss with prejudice all claims relating to the August 2016 transactions. We will allow Ms. Bonilla to file an amended complaint to plead timely and plausible claims regarding the overdraft protection transaction within our jurisdiction and supplemental state law claims.

---

[1] ECF Doc. No. 20 at ¶ 6.

[2] *Id.* at ¶ 6.

[3] *Id.* at ¶ 7.

[4] *Id.*

[5] ECF Doc. No. 2 at "Exhibit B."

[6] ECF Doc. No. 20 at ¶ 8.

[7] *Id.*

[8] *Id.* at ¶ 9.

[9] ECF Doc. No. 2 at "Exhibit C."

[10] ECF Doc. No. 20 at ¶ 9.

[11] *Id.*

14

¹² *Id.* at ¶ 11.

¹³ *Id.*

¹⁴ *Id.*

¹⁵ *See Commonwealth v. Bonilla*, Docket No. CP-51-CR-0000237-2018 (Phila. Ct. of Common Pleas); *see also* ECF Doc. No. 20 at ¶ 15.

¹⁶ ECF Doc. No. 2 at "Exhibit E."

¹⁷ *See Commonwealth v. Bonilla*, Docket No. CP-51-CR-0000237-2018 (Phila. Ct. of Common Pleas).

¹⁸ ECF Doc. No. 20 at ¶ 11.

¹⁹ *Id.* at ¶ 17.

²⁰ *Id.*

²¹ *Id.*

²² ECF Doc. No. 9 at 6. In our memorandum dismissing her original complaint, we assumed July 31, 2018 – the date Ms. Bonilla presented her complaint to prison authorities for mailing - as the date of filing.

²³ ECF Doc. No. 20 at ¶¶ 19-25.

²⁴ *Id.* at § VI, Prayer for Relief.

²⁵ When considering a motion to dismiss "[w]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262, n.27 (3d Cir. 2010)). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

²⁶ ECF Doc. No. 26 at ¶¶ 3-4, 6-8.

15

[27] ECF Doc. No. 26 at ¶¶ 1, 9-10. Ms. Bonilla makes additional arguments we find non-responsive. For example, Ms. Bonilla argues her claims are based on the Credit Union's "fraud as is a common practice" citing a 2015 class action complaint brought by Maxine Beach in this district against American Heritage Federal Credit Union. *See* C.A. No. 15-5942. In that action, Ms. Beach, on behalf of herself and a class, claimed the American Heritage Federal Credit Union engaged in false, deceptive, misleading, or unfair collection practices in violation of the Fair Debt Collection Practices Act, Truth in Lending Act, Fair Credit Billing Act, the Pennsylvania Fair Credit Extension Uniformity Act, Pennsylvania Unfair Trade Practices and Consumer Protection Law, and common law conversion and unjust enrichment. Ms. Beach challenged the Credit Union's practice of generating involuntary cash advances from its customer's accounts to pay an attorney to sue the customer. *See* No. 15-5942 at ECF Doc. No. 27-1. Upon the parties' settlement, Judge Savage granted the motion for final approval of class action settlement in July 2017. *Id.* at ECF Doc. No. 52.

Ms. Bonilla contends she could not participate the *Beach* class action litigation but relies on the allegations in that action to argue the Credit Union's "common practice" of fraud. *See* ECF Doc. No. 26 at ¶ 10. Ms. Bonilla's current allegations have nothing to do with the claims asserted in the *Beach* litigation.

[28] ECF Doc. No. 26 at 6.

[29] ECF Doc. Nos. 26, 28.

[30] 2 James Wm. Moore *et al.*, Moore's Federal Practice ¶ 12.33 (3d ed. 2018).

[31] *Target Global Logistics Services, Co. v. KVG, LLC*, No. 15-4960, 2015 WL 8014752, at *5 (E.D. Pa. Dec. 3, 2015) (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1353 (3d ed.2004)).

[32] *Id.* (quoting *Silicon Power Corp. v. Gen. Elec. Zenith Controls, Inc.*, No. 08-4331, 2009 WL 1971390, at *1 (E.D. Pa. July 7, 2009)).

[33] *Id.* at *5, n.6. Judge Leeson explained the advisory committee's notes to the 1993 amendment to Rule 4 supported his reasoning quoting the committee: "Prior to this revision, Rule 4 was entitled 'Process' and applied to the service of not only the summons but also other process as well.... The revised rule is entitled 'Summons' and applies only to that form of legal process." *Id.*

[34] ECF Doc. No. 21.

[35] Fed.R.Civ.P. 4(h)(1)(A), (B).

[36] Pa.R.Civ.P. 424.

[37] *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir. 1993).

[38] *Olsen v. Mapes*, 333 F.3d 1199 (10th Cir. 2003).

<sup>39</sup> *Id.* at 1204-05.

<sup>40</sup> *Jones v. Hashagen*, 419 F.App'x 141, 144-45 (3d Cir. 2011).

<sup>41</sup> *Id.* at 145.

<sup>42</sup> ECF Doc. No. 15.

<sup>43</sup> *Just Enter., Inc. v. O'Malley & Langan, P.C.*, 560 F.Supp. 2d 345, 352 (M.D. Pa. 2008). Even if we found insufficient service of process, we would not dismiss it. For the reasons set forth above, dismissal is inappropriate where there is a reasonable prospect service may yet be obtained. *Umbenhauer v. Woog*, 969 F.2d 25, 30 (3d Cir. 1992). Exercising our discretion, we would quash the service and grant Ms. Bonilla additional time to properly effectuate service.

<sup>44</sup> 12 U.S.C. § 1751 *et seq.*

<sup>45</sup> ECF Doc. No. 17.

<sup>46</sup> ECF Doc. Nos. 9, 17.

<sup>47</sup> 12 U.S.C. § 1759.

<sup>48</sup> Pub.L. No. 105-219, 112 Stat. 913 (1998).

<sup>49</sup> 15 U.S.C. § 1635.

<sup>50</sup> 12 C.F.R. pt. 1026. The Federal Reserve Board, under the authority granted to it by Congress in enacting the Truth in Lending Act, promulgated Regulation Z to "elaborate and expand the legal framework governing commerce in credit." *Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 436, n. 3 (3d Cir. 2018) (citing *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559-60 (1980)). In 2010, Congress "reassigned this regulatory authority to the Consumer Financial Protection Bureau (CFPB) ... and today, Regulation Z is codified within the CFPB's regulations ... as are the CFPB's own Official Staff Interpretations of TILA and Regulation Z ...." *Id.*

<sup>51</sup> 15 U.S.C. §§ 1666-1666j. The Fair Credit Billing Act amended the Truth in Lending Act to "buil[d] on TILA's original goal of 'requir[ing] ... full disclosure of credit charges ... so that the consumer can decide for himself whether the charge is reasonable,' [and] aims 'to protect the consumer against inaccurate and unfair credit billing and credit care practices.'" *Krieger*, 890 F.3d at 433 (3d Cir. 2018) (quoting S.Rep. No. 90-392, at 1 (1967) and 15 U.S.C § 1601(a)).

<sup>52</sup> Section 1666 does not contain a subsection (h). We assume Ms. Bonilla intended to bring claims under 1666h.

<sup>53</sup> 15 U.S.C. § 1601(a).

<sup>54</sup> *Id.*

17

[55] 15 U.S.C. § 1666(a)(2).

[56] *Krieger*, 890 F.3d at 433 (citing 15 U.S.C. § 1640(a)).

[57] 15 U.S.C. §1640 (e); *Dehart v. Homeq Servicing Corp.*, No. 11-416, 2013 WL 12147768, at * 3 (E.D. Pa. June 25, 2013).

[58] *Handley v. Chase Bank USA NA*, 387 F. App'x 166, 170 (3d Cir. 2010) (quoting *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir.1994)); *see also Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499, 502 (3d Cir. 1998) (applying equitable tolling to Truth in Lending Act claims).

[59] ECF Doc. No. 27 at ¶ 13.

[60] ECF Doc. No. 20 at ¶¶ 6-16.

[61] *Id.* at ¶ 6.

[62] *Id.* at ¶ 7.

[63] *Id.* at ¶ 8.

[64] *Id.* at ¶ 9. The nature of the "agreement" Ms. Bonilla made with the Credit Union on July 1, 2016 is unclear and we cannot understand how Ms. Bonilla made such an agreement on July 1, 2016 when the disputed deposits occurred approximately six to eight weeks later on August 13 and August 17, 2016.

[65] *Id.* at ¶ 10.

[66] *Id.* at ¶ 11.

[67] *Id.*

[68] *Id.* at ¶¶ 11-12.

[69] ECF Doc. No. 27 at ¶ 5.

[70] ECF Doc. No. 9.

[71] *Id.* at 6.

[72] ECF Doc. No. 10.

[73] ECF. Doc. No. 20 at ¶ 11.

[74] *Id.* at ¶ 17.

18

[75] *Id.*