# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| MERSADIES BONILLA | : CIVIL ACTION |
|---|---|
| v. | : NO. 18-3293 |
| AMERICAN HERITAGE FEDERAL CREDIT UNION | : |

## MEMORANDUM

**KEARNEY, J.**  April 4, 2019

Mersadies Bonilla is defending criminal charges in Pennsylvania state court arising from her alleged receipt of thousands of dollars from a credit union account of her ex-boyfriend's mother into her credit union account. She then spent a sizable portion of the transferred funds. Upon learning of the disputed transfer, the credit union reversed the transfer even though her account did not have sufficient funds. Her credit union account then had a negative balance more than $3,300.00. The credit union did not charge her interest or fees on the negative balance. It accurately reported her savings account as "overdrawn" to credit reporting agencies for accounts with "overdraft" protection. She feels the credit union's conduct in reversing the deposit creating an "overdraft" balance and then reporting her savings account as overdrawn since 2017 violates the law. While incarcerated as a pretrial detainee on the state criminal case, Ms. Bonilla *pro se* sued her credit union under the Electronic Funds Transfer Act, its implementing Regulation E, the Truth in Lending Act, its implementing Regulation Z, and the Fair Credit Billing Act. The credit union moves to dismiss the Fourth Amended Complaint as failing to plead claims under these federal statutes and the claims are time-barred. Ms. Bonilla is now released awaiting her criminal trial and presented oral argument. After oral argument, we grant the credit union's motion and enter judgment in its favor on all claims. After four failed complaints, we dismiss with prejudice.

## I. Background

Mersadies Bonilla became a member of the American Heritage Federal Credit Union in 2015 by opening two accounts: a "secured credit card account" and a "savings share account."[1] On August 13 and 17, 2016, someone made three deposits to Ms. Bonilla's savings account totaling $5,600 from the account of Joyce Eubanks, another Credit Union member.[2] Ms. Eubanks contested the validity of the $5,600 in transfers and the Credit Union, along with Philadelphia Police, investigated the transfers as fraudulent.[3]

In response to what it considered fraudulent activity, the Credit Union "reversed" the $5,600 transfer to Ms. Bonilla's savings account on September 7, 2016.[4] After debiting $5,600 against Ms. Bonilla's savings account, her account had an ending balance of negative $3,334.92. The Credit Union charged off the overdrawn savings account in December 2016 with a negative balance of $3,334.92.[5]

The Credit Union first reported the charged off savings account to credit bureaus in January 2017.[6] The Credit Union attached the Credit Reporting Resource Guide to its Answer requiring use of the code "8B" for overdrawn and charged off deposit accounts such as Mr. Bonilla's savings account.[7]

Ms. Bonilla filed a Complaint on August 3, 2018, a First Amended Complaint on August 24, 2018, a Second Amended Complaint on August 27, 2018, and a Third Amended Complaint on September 12, 2018. We granted the Credit Union's motion to dismiss with prejudice all claims relating to the August 2016 transactions and without prejudice to allow Ms. Bonilla to file an amended complaint to plead timely and plausible claims regarding an alleged overdraft protection transaction.[8]

2

Ms. Bonilla filed a Fourth Amended Complaint alleging the Credit Union violated federal law by opening a "Deposit Account Overdraft Protection Account" added to her credit report in the amount of $3,334 beginning in August 2018.[9] Credit Union now moves for judgment on the pleadings. Ms. Bonilla did not file a response to the motion. We held a pre-trial conference with counsel for the Credit Union and Ms. Bonilla appearing pro se. We heard oral argument on the Credit Union's motion.

## II.    Analysis[10]

Ms. Bonilla alleges the Credit Union opened a "Deposit Account Overdraft Protection Account" on January 1, 2017 which she did not open, request to be open, opt-in to, or contract for.[11] Despite reports from TransUnion showing a balance of $3,334 on Ms. Bonilla's savings account beginning in January 2017 and every month through February 2018, and from April 2018 through August 2018,[12] Ms. Bonilla now contends the allegedly unauthorized "Deposit Account Overdraft Protection" account "has been added to [her] credit report in the amount of $3,334.00 starting on date August of 2018 [sic]."[13]

The Credit Union denies it ever opened a "Deposit Account Overdraft Protection Account" on Ms. Bonilla's account and the transactions on her savings account do not involve overdraft protection. It argues it is a reversal of charges on her savings account. Credit Union first argues Ms. Bonilla's claims do not fall under the Electronic Funds Transfer Act ("EFTA"),[14] its implementing Regulation E,[15] the Truth in Lending Act ("TILA")[16] or the Fair Credit Billing Act ("FCBA")[17] and its implementing Regulation Z.[18] It alternatively argues even if Ms. Bonilla's claims fall under these federal statutes and regulations, they are time-barred by the one year statute of limitations. At oral argument, Ms. Bonilla contends the Credit Union's debit of the $5,600 at issue is an "electronic transfer," argues the transactions relate to her credit card account, and her

3

claims are not time-barred because a TransUnion credit report shows no reporting of the $3,334 charged off negative balance until August 2018.

### A. Ms. Bonilla's claims do not fall under EFTA, TILA, the FCBA, Regulation E, or Regulation Z.

#### 1. EFTA and Regulation E do not apply to reversing the transfer.

The Credit Union argues EFTA and Regulation E do not apply to the allegations of the Fourth Amended Complaint, arguing EFTA is intended to protect consumers engaging in electronic fund transfers and remittance transfers and Regulation E applies to electronic fund transfers authorizing a financial institution to debit or credit a consumer's account.

The purpose of EFTA is "to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems" with the "primary objective ... the provision of individual consumer rights."[19] EFTA defines the term "electronic fund transfer" as "any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account" and includes, but is not limited to, "point-of-sale transfers, automated teller machine transactions, direct deposits or withdrawals of funds, and transfers initiated by telephone."[20]

Ms. Bonilla alleges the Credit Union violated EFTA and Regulation E, specifically 12 U.S.C. § 205.17 providing the requirements for overdraft services. The regulation defines "overdraft service" as "a service under which a financial institution assesses a fee or charge on a consumer's account held by the institution for paying a transaction (including a check or other item) when the consumer has insufficient or unavailable funds in the account."[21] The regulation excludes from the term "overdraft service" "any payment of overdrafts pursuant to – (1) [a] line

4

of credit subject to ... Regulation Z, including transfers from a credit card account, home equity line of credit, or overdraft line of credit; (2) [a] service that transfers funds from another account held individually or jointly by a consumer, such as a savings account; or (3) [a] line of credit or other transaction exempt from ... Regulation Z ... pursuant to 12 CFR 226.3(d)."[22] The Regulation requires a financial institution to provide a written notice describing the institution's overdraft service; requires the consumer to affirmatively opt-in to the overdraft service, and other requirements for the opt-in procedure.[23]

The Credit Union argues the pleadings show Ms. Bonilla had an overdrawn savings account since 2016 "due to a reversal of charges" the Credit Union made in accordance with the terms of the Membership Agreement between it and Ms. Bonilla. The Credit Union points to Regulation E excluding from the definition of "electronic fund transfer" any "intra-institutional automatic transfers under an agreement between a consumer and a financial institution."[24] The Credit Union contends it did not open any overdraft account and simply reversed the allegedly fraudulent deposits into Ms. Bonilla's savings account. It argues there is no electronic transfer as defined by EFTA.

We agree with the Credit Union. It did not offer an overdraft service governed by EFTA. It did not charge a fee or interest on the negative balance in the savings account. Ms. Bonilla challenges a reversal of an intra-institutional transfer between two credit union accounts when the police authorities charged fraud in connection with the transfer. We are not deciding whether the Credit Union had the right to transfer the funds under a member agreement. Ms. Bonilla only challenges the transfer back to Ms. Eubanks' Credit Union account as violating EFTA and Regulation E. It plainly does not.

5

## 2. TILA, the FCBA, and Regulation Z does not apply.

Congress enacted TILA to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices."[25] The FCBA amended TILA to "buil[d] on TILA's original goal of 'requir[ing] ... full disclosure of credit charges ... so that the consumer can decide for himself whether the charge is reasonable,' [and] aims 'to protect the consumer against inaccurate and unfair credit billing and credit card practices.'"[26] The FCBA "protect[s] the consumer against inaccurate and unfair credit billing and credit card practices," by, *inter alia*, requiring credit card issuers to correct billing errors.[27]

Ms. Bonilla alleges the Credit Union violated several sections of the FCBA: Section 1666a, regulating credit reports with regard to consumer credit; Section 1666(b)(1), pertaining to the correction of billing errors and defining a "billing error" as "a reflection on a statement of an extension of credit which was not made to the obligor or, if made, was not in the amount reflected on such statement"; and Section 1666h, prohibiting credit card issuers from offsetting a cardholder's indebtedness from funds held on deposit unless the cardholder authorizes such offset in writing.

Ms. Bonilla alleges the Credit Union "offset" her savings account to satisfy "debt" by adding a deposit overdraft protection account without her authorization in violation of TILA and Regulation Z, and violated the FCBA by reporting to credit reporting agencies a delinquency in her account without noting her dispute over the $5,600 August 2016 deposits.

The Credit Union argues Ms. Bonilla's claims do not come within TILA, the FCBA, and Regulation Z because her allegations do not involve credit cards, credit billing, or credit card debt.

6

The Credit Union argues it simply closed Ms. Bonilla's accounts – both her credit card account and savings account – each with negative balances, she had no assets with the Credit Union, and it could not have "offset" consumer credit card debt.

Ms. Bonilla does not state a claim based on fees or charges involved in credit transactions. The Credit Union did not engage in a credit transaction. It reversed a deposit into a savings account upon determining fraud in the deposit transfer. The Credit Union did not charge a fee or interest. It need not disclose what it is not charging. The pleadings admit the Credit Union transferred the funds from the savings account. Given these admissions, we cannot further proceed into finding Ms. Bonilla states a claim against the Credit Union for violating federal law in a credit card account.

Ms. Bonilla also failed, after four attempts, to plead the Credit Union violated federal law in characterizing its reversal of an allegedly fraudulent deposit under a credit reporting agency's description "8B" for overdrawn and charged off deposit accounts such as Mr. Bonilla's savings account. Ms. Bonilla has never alleged the Credit Union directed the credit reporting agency to misrepresent the nature of the overdrawn savings account.

### B. We need not reach the question of whether there is pleaded conduct within the statute of limitations.

As we explained in our memorandum granting the Credit Union's motion to dismiss the third amended complaint, TILA and the FCBA have one year statute of limitations.[28] Ms. Bonilla does not dispute this, but now alleges the "'Deposit Account Overdraft Protection' account has been added to [her] credit report in the amount of $3334.00 starting" in August 2018. She did not deny previous credit reports showed reporting of $3,334 beginning in January 2017, but contends the reporting somehow disappeared from her credit report and re-appeared in August 2018 as evidenced by a TransUnion report attached to her Fourth Amended Complaint.[29]

7

At oral argument, the Credit Union argued Ms. Bonilla's first three Complaints show credit reporting beginning in January 2017 of the $3,334 negative balance on the savings account; the Credit Union cannot explain why the reporting stopped and then re-started in August 2018, but it cannot be held liable for TransUnion's conduct.

We cannot today find claims based on TransUnion's reporting are time-barred. But the pleadings admit the credit reporting agency reported this transaction a year and a half before Ms. Bonilla filed this action. As we find Ms. Bonilla cannot state a claim under EFTA, Regulation E, TILA, the FCBA and its implementing Regulation Z, we need not address the statute of limitations.

### III. Conclusion

Viewing the facts and all reasonable inferences to be drawn in the light most favorable to Ms. Bonilla, we find the Credit Union is entitled to judgment as a matter of law. We grant the Credit Union's Motion for judgment on the pleadings and dismiss Ms. Bonilla's Fourth Amended Complaint with prejudice in the accompanying Order.

---

[1] Fourth Amended Complaint at ¶ 3 (ECF Doc. No. 34). Credit Union contends Ms. Bonilla became a member of the Credit Union in 2016, not 2015, and characterizes the savings account as a "primary savings account" rather than a "savings share account." *See* Answer to Fourth Amended Complaint at ¶ 3 (ECF Doc. No. 44). We refer to the accounts as the "credit card account" and "savings account."

[2] ECF Doc. No. 34 at ¶ 10.

[3] At oral argument on the Credit Union's motion, Ms. Bonilla represented the investigation into the deposits is ongoing in her criminal case.

[4] ECF Doc. No. 34 at ¶ 10; ECF Doc. No. 44 at ¶¶ 6-8, 10.

[5] ECF Doc. No. 44 at ¶ 7; ECF Doc. No. 44-2 at 26. The Court uses the pagination assigned to the document by the CM/ECF docketing system.

[6] ECF Doc. No. 44 at ¶ 7; ECF Doc. No. 44-3 at 1.

[7] ECF Doc. No. 44 at ¶ 7; ECF Doc. No. 44-4 at 1-4.

⁸ ECF Doc. Nos. 29, 30.

⁹ ECF Doc. No. 34.

¹⁰ Rule 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay trial...." Fed.R.Civ.P. 12(c). "Under Rule 12(c), judgment will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law. In reviewing the grant of a Rule 12(c) motion, we must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Minnesota Lawyers Mut. Ins. Co. v. Ahrens*, 432 F. App'x 143, 147 (3d Cir. 2011). We apply the standard of Rule 12(b)(6) and "view the facts alleged in the pleadings and the inferences to be drawn from those facts in light most favorable to the [nonmoving party].'" *Mele v. Fed. Reserve Bank of New York*, 359 F.3d 251, 253 (3d Cir. 2004) (quoting *Leamer v. Fauver*, 288 F.3d 532, 535 (3d Cir. 2002)).

¹¹ ECF Doc. No. 34 at ¶ 6.

¹² *See* Second Amended Complaint at ¶ 16 and Exhibit "F" at 7-8 (ECF Doc. No. 14).

¹³ ECF Doc. No. 34 at ¶ 8.

¹⁴ 15 U.S.C. § 1693 *et seq.*

¹⁵ Ms. Bonilla alleges a violation of Regulation E at 12 C.F.R. § 205.17. *See* ECF Doc. No. 34 at ¶¶ 19-20.

¹⁶ 15 U.S.C. § 1601 *et seq.*

¹⁷ 15 U.S.C. §§ 1666-1666j.

¹⁸ 12 C.F.R. pt. 1026.

¹⁹ 15 U.S.C. § 1693(b).

²⁰ 15 U.S.C. § 1693a(7). *See also* 12 C.F.R. § 1005.3(b)(1) defining the term "electronic fund transfer" as "any transfer of funds that is initiated through an electronic terminal, telephone, computer, or magnetic tape for the purpose of ordering, instructing, or authorizing a financial institution to debit or credit a consumer's account" and includes, but is not limited to "point-of-sale transfers; automated teller machine transfers; direct deposits or withdrawals of funds; transfers initiated by telephone; and transfers resulting from debit card transactions, whether or not initiated through an electronic terminal."

²¹ 12 C.F.R. § 205.17(a).

²² *Id.*

[23] *Id.* at § 205.17(b), (c), (d).

[24] *See* ECF Doc. No. 46-1 at 5, citing 12 C.F.R. § 1005.3(c). The actual language of § 1005.3(c)(5) excludes "automatic transfers by account-holding institution[s]" defined as "[a]ny transfer of funds under an agreement between a consumer and a financial institution which provides that the institution will initiate individual transfers without a specific request from the consumer: (i) Between a consumer's accounts within the financial institution; (ii) From a consumer's account to an account of a member of the consumer's family held in the same financial institution; or (iii) Between a consumer's account and an account of the financial institution, except that these transfers remain subject to" 12 C.F.R. § 1005.10 pertaining to "preauthorized transfers."

[25] 15 U.S.C. § 1601(a).

[26] *Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 433 (3d Cir. 2018) (quoting S.Rep. No. 90-392, at 1 (1967) and 15 U.S.C § 1601(a)).

[27] 15 U.S.C. § 1666(a)(2).

[28] ECF Doc. No. 29 at 8-13.

[29] ECF Doc. No. 34 at 7.